WILLIAM H. NIEHOFF

*vs.*

CONGRESS SQUARE HOTEL COMPANY

Kennebec. Opinion, January 14, 1954.

*Dubord & Dubord,* for plaintiff.

*Verrill, Dana, Walker, Philbrick & Whitehouse,*
for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, WEBBER, JJ. TIRRELL, J., did not sit.

MERRILL, C. J. On exceptions. This is an action for defamation by means of a radio broadcast. The amended declaration contains two counts. The first count alleges that the defendant libeled the plaintiff by accusing him of the crime of subornation of perjury by broadcasting over its radio station WCSH. It alleges the libel was published in a comment by its servant and agent over "radio station WCSH by means of the following false, malicious, scandalous and defamatory matter of and concerning the plaintiff, to wit:

> "Sahagian was the key witness in the Research Committee's hearing and later in the Portland trial. He told me that he had not wanted to admit on the stand at Portland that he had committed a crime since he had not committed any. However, he said he was urged to do so by Bird and Assistant Attorney General William H. Niehoff.
>
> Bird and Niehoff, he said, told him that if he did not testify to a crime that no crime could be proven against Papalos who would then fail to be convicted. So he told me he went ahead and said on the witness stand that he had in fact committed a crime after Bird and Niehoff had urged him to do so.
>
> Largely on the basis of his testimony at Portland his wine company has been suspended from further business with the State Liquor Commission. Sahagian feels that this is definitely unfair, since he did not commit any crime at all but was just gathering evidence with which to combat corruption in Maine.
>
> The Liquor Commission in ordering the suspension of the Fairview Wine Company pointed out that Sahagian had admitted on the witness stand that he was willing to commit a crime to keep his business going. Sahagian now says that this testi-

mony should have been viewed in the light of his explanation of it, that he was saying these things at the urging of Bird and Niehoff.

Sahagian was astonished to learn that he had been indicted by the Kennebec Grand Jury. He felt that he was the man responsible for opening up the entire investigation, then, too, he had testified as Bird and Niehoff wanted him to at Portland.

'I have been made to be the goat here. They wanted me to admit a crime in Portland, then they wanted to bring me back to Augusta and convict me there.' "

The second count alleges that the defendant did publish of and concerning the plaintiff by similar broadcast by the same servant and agent, over the same radio station, of and concerning the plaintiff *in his capacity as an attorney-at-law* the same words above set forth, and it contains the further allegation that by means of the publishing of the foregoing libelous statements the defendant did falsely accuse the plaintiff of having committed the heinous crime of subornation of perjury.

In neither count is there a claim for special damages, nor is there any allegation that the plaintiff suffered special damages because of the alleged libel.

Although the plaintiff in his declaration refers to the publication as libelous and has treated the action as an action for *libel,* in the view that we take of this case we are not called upon to now determine whether defamation by words spoken over the radio, whether read from a script or not, constitute in the strict legal sense slander, libel, or a special form of defamation, liability for which is to be measured by the standards applied to libel.

See 53 C. J. S. page 200, Sec. 121, c; 33 Am. Jur. page 39, Sec. 3. *Sorenson* v. *Wood,* 123 Neb. 348, 243 N. W. 82, 82 A. L. R. 1098. Appeal dismissed in 290 U. S. 599, 78 L. Ed. 527. See also notes in 82 A. L. R. 1109, 104 A. L. R. 877, 124 A. L. R. 997, and 171 A. L. R. 780.

The case of *Hartman* v. *Winchell,* 296 N. Y. 296, 171 A. L. R. 759, 73 N. E. (2nd) 30, is especially interesting. The majority opinion sets forth the grounds upon which they hold that broadcasting a script by reading the same constitutes libel instead of slander. Judge Fuld in an opinion concurring in the result advances the view that liability for broadcasting defamatory matter whether read from a script or not, and whether called libel or slander, should have applied to it the same standards for the determination of liability as are applied in actions for libel.

There is, however, no direct allegation in traversable form in either count of the amended declaration that the words were written or that they were broadcast from a written script.

Measured by the standards applicable to either libel or slander, the words set forth in the two counts in the amended declaration are not *per se* defamatory. The reasons therefor have been heretofore stated by this court in the full opinion written in the case of *Niehoff* v. *Sahagian,* 149 Me. 396, filed this day herewith. Nor are the words set forth in either count of the amended declaration made defamatory by means of inducement and colloquium when measured by the standards applicable to either libel or slander.

In each count of the amended declaration the plaintiff alleges that "in the aforesaid broadcast made by the agent and servant of the defendant corporation, the said defendant corporation stated publicly that the plaintiff knew that the said Herman D. Sahagian had not committed the crime of conspiracy to bribe certain public officials,". But each count of the declaration after further allegations as to the procurement by the plaintiff of the giving of false testimony by Sahagian that he had committed the crime of conspiracy, continues and alleges "all of which foregoing charges and accusations concerning the plaintiff were made

by the defendant corporation by its servant and agent in a comment over the aforesaid radio station WCSH *by means of the following false, malicious, scandalous and defamatory matter,* (emphasis ours) of and concerning the plaintiff, to wit:" the words attributed to the commentator agent of the defendant, above set forth.

We said in *Thompson* v. *Sun Pub. Co.,* 91 Me. 203, 207, which was an action for libel:

> "It is not necessary, in order to render words actionable, that there should be the same precision and certainty in the language employed to make the charge, as in the allegations of an indictment for the same offense. If the defamatory words, taken in their natural and ordinary signification, fairly import a criminal charge, it is sufficient to render them actionable. * * * Whether or not the language used will bear the interpretation given to it by the plaintiff, whether or not it is capable of conveying the meaning which he ascribes to it, is in such a case a question of law for the court. * * *

> But upon demurrer to the declaration, words alleged to be libelous cannot be pronounced actionable by the court 'unless they can be interpreted as such with at least reasonable certainty. In case of uncertainty as to the meaning of expressions of which a plaintiff complains, the rule requires him to make the meaning certain by means of proper colloquium and averment.' *Wing* v. *Wing,* 66 Maine, 62."

In this case we are confined in our interpretation of the words set forth in the declaration, to the words themselves stripped of all allegations in the declaration which might constitute an inducement. This is the result of the specification above set forth which alleges "all of the foregoing charges and accusations concerning the plaintiff" were made in the words set forth in the declaration. *Niehoff* v. *Sahagian,* 149 Me. 396, *supra,* and *Brown* v. *Rouillard,* 117 Me. 55.

We unhesitatingly hold that the language set forth in the counts of the amended declaration is incapable of conveying the meaning therein ascribed to it by the plaintiff. Although the words alleged to have been used in each of the counts in this amended declaration are different from those used in the two amended counts in the declaration in *Niehoff* v. *Sahagian,* 149 Me. 396, *supra,* they are subject to the same infirmities.

They neither charge the commission of the crime of subornation of perjury nor do they charge the commission of any other crime. Nor do they accuse the plaintiff of misconduct in his office as an attorney-at-law. Every act alleged to have been done by the plaintiff by these words might be true, yet if the plaintiff did not know of the falsity of the testimony which it is alleged by these words he instigated Sahagian to give, or if his acts were performed in good faith on his part, the words were not defamatory as accusing the plaintiff of the commission of any crime or of any misconduct in his office as an attorney-at-law, nor were they capable of holding him up to hatred, ridicule or contempt. Nor are these intrinsically non-defamatory words rendered defamatory by the use of inducement and colloquium.

Both counts in the declaration were demurrable. The action of the presiding justice in sustaining the demurrers to each of the counts must be sustained and the exceptions overruled.

The entry will be

*Exceptions overruled.*