ECKER *v.* FUCHS.

[No. 19,003. Filed June 5, 1959.]

556

*Benjamin Piser, Joseph Schmitt, Walter Rice* and *Taylor, Allen, Matthews & Gay,* all of South Bend, for appellant.

*Seebirt, Oare, Deahl & Thornburg, William T. Oare* and *Thomas L. Murray,* all of South Bend, for appellee.

KELLEY, J.—Appellant and appellee were partners in the conduct of a tavern business. A dispute arose between them and appellee filed an action for dissolution of the partnership. While the dissolution proceeding was pending, the parties entered into a certain written agreement, the parts thereof, pertinent to the present inquiry, are now set forth:

## "AGREEMENT

"WITNESS this agreement between Andrew Fuchs and Joseph Ecker both of South Bend, Indiana, on this 26th day of May, 1955, all in consideration of the mutual promises and covenants hereinafter contained.

"It is understood between the parties that a dispute has arisen between said parties, they being partners operating a tavern known as 'Rogers Bar'

at 1435 Portage Avenue in the City of South Bend, which dispute has led to the filing of a complaint by Fuchs for dissolution of said partnership, the allegations of which said complaint Ecker expressly denies. It is further understood by the parties that Fuchs' singular complaint against Ecker is based upon his occasional drinking of whiskey and that there is no dispute involving the integrity of the parties or any misconduct of said parties unrelated to events occurring in conjunction with said Ecker's imbibing said above referred to beverage. With such understanding, it is agreed as follows:

"1. Fuchs hereby agrees to dismiss his complaint in the St. Joseph County Superior Court No. 1 now pending against Ecker, on the conditions that this agreement be signed and that Ecker pay the costs on dismissal.

"2. In consideration thereof Ecker hereby grants to Fuchs an option to purchase Ecker's interest in said partnership at any time in the sole discretion of Fuchs on the following terms and conditions, to wit:

"(a) Fuchs will give Ecker seven (7) days notice of the exercise of option. Said notice shall be given by registered mail directed to Ecker's home address, which, unless further notice is given to Fuchs, shall be 1402 S. Kemble, in the city of South Bend.

"(b) Fuchs shall, upon the exercise of said option, tender within said seven (7) days the book value of Ecker's interest in said partnership computed as follows:

. . . . .

"(ii) An inventory shall be taken within two (2) weeks after the giving of notice, which said inventory shall be taken by an accredited representative of General Liquors, Inc., or LaSalle Liquors, Inc., in such order if the first shall refuse. Said inventory shall be taken in the presence of said partners.

"(iii) The partnership books shall be adjusted to the date of taking said inventory in accordance with accepted accounting practice.

. . . . .

"(v) Upon receipt of the adjusted evaluation of

the worth of the partnership interest of Ecker and not later than three (3) days thereafter, Fuchs shall deposit with the First Bank and Trust Company of South Bend, South Bend, Indiana and with the trust officer thereof said amount of money in cash or the equivalent thereof including cashier's check, bank check or personal certified check.

. . . . . .

"3. The exercise of this option must be predicated upon conduct of Ecker resulting from or related to his imbibing of whisky, which conduct upon partnership premises is prejudicial to the successful carrying on of the partnership business. Ecker shall have a period of one (1) week from the date of receipt of the above referred to notice in which to institute proceedings to oppose the exercise of said option, which said opposition shall be made in a court of competent jurisdiction, and shall have the burden of proving that said exercise of said option was arbitrary or capricious, and not in conformity with the singular cause set forth in this agreement.

. . . . ."

The evidence discloses and appellant admitted that on December 2, 1955 appellant "did imbibe whisky upon the partnership premises and a disturbance occurred on said premises." There is also evidence that at 11:30 P.M., on December 2, 1955, appellee was called at his home and informed that appellant "was wrecking the bar," that appellee went down to the tavern and "found the bar in disorder, and the police there, . . . and Ecker was in a sleeping position with his head on the table. . . . Ecker didn't come to work until the following Wednesday; when witness (appellee) told Ecker that under the contract this had 'to come to an end'; to which Ecker replied he couldn't get him out and if he was wrecked, witness (appellee) would be also." It also appears from the record that appellant at the aforesaid time attacked and assaulted a customer seated at a table with three others, and

for such purpose undertook to wield a chair at such customer, whose eye was blackened, his glasses broken, and glass got into his eye. The assaulted customer said he had not been in the tavern since and would not stop there now if passing. Another customer said that he did not go to the tavern as frequently as before said occurrence.

Thereafter, on December 5, 1955, appellee gave written notice to appellant that by reason of his conduct, appellee "does herein exercise his option granted by way of agreement executed on the 26th day of May, 1955" and that the inventory would be taken on December 11, 1955 in accordance with the contract.

Thereupon, appellant filed a complaint against appellee to resist the exercise of the option by appellee on the grounds that the "basis for its excercise did not exist; and that the agreement was invalid as being ambiguous, impossible of performance and without valid consideration." This complaint was dismissed. Appellee filed a counter-claim, afterward amended, for specific performance of the agreement and for other relief. The issue formed by this amended counter-claim and appellant's answer thereto was submitted to the court for trial, without jury. Pursuant to appellant's request, the court made special findings of fact and stated its conclusions of law thereon.

On such findings and conclusions the court rendered judgment providing for an inventory of the partnership business to ascertain the book value of appellant's interest in the partnership; the adjustment of the partnership books to the date of the inventory; that appellee deposit with a named bank the cash determined to represent appellant's interest in the partnership to be paid to appellant upon his compli-

ance with the decree; that appellant execute to appellee a Bill of Sale of his interest in the partnership; that appellant execute such documents as necessary to transfer to appellee the interest of appellant in the lease of the premises and in the Indiana alcoholic licenses and permits; and that appellant's interest in the partnership, assets, leases, permits, warrants and licenses shall cease and terminate one hour after the deposit of the money in the designated bank.

The appellant filed his motion for a new trial on the grounds that the decision is not sustained by sufficient evidence; that the decision is contrary to law; and that the court erred in overruling his motion for judgment at the conclusion of appellee's evidence. Appellant assigned as errors on appeal the overruling of the new trial motion, the overruling of his motion to modify the judgment, and that the court erred in its separately numbered conclusions of law.

Appellee has earnestly and consistently urged that appellant's brief failed to comply with the provisions of Rule 2-17(e), Rules of the Supreme Court, which requires the brief, under the heading "Argument", to specify such of the assigned errors as are intended to be urged, and each cause in the motion for new trial intended to be urged and that "After each assignment of error relied upon—except the ruling on a motion for a new trial, and after each cause for a new trial relied upon, there shall be concisely stated the basis of the objection to the ruling complained of, exhibiting clearly the points of fact and of law being presented, and how they are applicable, citing the authorities and statutes relied upon . . . ." Rule 2-17(f) provides that errors assigned and causes for a new a new trial not treated "as herein directed", shall be deemed to be waived.

Appellee filed his motion to affirm the judgment appealed from because of the failure of appellant's brief to comply with said rule. Appellant then filed petition to amend the argument portion of his brief which was granted and appellee's said motion was denied. Appellant then filed his "Amended Argument" and appellee filed his supplemental motion to affirm on the ground that said "Amended Argument" also failed to comply with said rule. Appellee's said supplemental motion to affirm was then denied. Appellee thereafter filed two petitions for extension of time within which to file his brief, the last of which stated that his brief would be on the merits. Consequently, appellee waived his right to affirmance of the judgment because of any technical defects in appellant's brief. *Biel, Inc.* v. *Kirsch* (1958), 130 Ind. App. —, 153 N. E. 2d 140, 142.

In *Harrell* v. *Harrell* (1957), 127 Ind. App. 443, 142 N. E. 2d 644, it was said that where the appellant has not substantially complied with Rule 2-17 (e), the appellee may rely on the court to enforce the rule. In *Yiatros* v. *Cole, et al.* (1946), 117 Ind. App. 19, 68 N. E. 2d 657, the court declared that Rule 2-17 has the force and effect of law and is binding upon the litigant and "court" and "cannot be entirely ignored as long as it remains in effect." The denial by the court of a motion to dismiss an appeal or affirm the judgment appealed from, based on asserted insufficiencies of the appellant's brief, does not relieve the appellant of the burden of establishing error by a brief which, alone and independently of the transcript, enables each judge of the court to intelligently consider the questions sought to be presented. *Dorsey* v. *State of Indiana* (1913), 179

Ind. 531, 534, point 4, 100 N. E. 369; *Barker, Gdn.* v. *Central Building & Loan Association* (1932), 94 Ind. App. 661, 663, point 4, 182 N. E. 90; I. L. E., Vol. 2, Appeals, §§383, 386, pages 238 and 258.

Appellant's "Amended Argument" portion of his brief begins with what is apparently intended as a summary of his argument. In this summary he sets forth various contentions which he says render the agreement incapable of specific performance. He asserts, for instance, that the provisions predicating the exercise of appellee's option upon appellant's conduct in "imbibing of whiskey" upon the partnership premises is such an ambiguous and uncertain statement that it makes the contract "on its face" unenforcible by specific performance. This is followed by an admission that the evidence showed him to be under the influence of intoxicants and causing a disturbance but, he avers, there is no evidence that "the same" was "prejudicial" to the successful carrying on of the business and that he cites this "not to establish" that such misconduct might not "tend" to prejudice the business but simply that the "parties are bound by the express language" they used.

In order thereafter, appellant asserts that the time provided in the agreement for the exercise of the option is too indefinite to be enforced by specific performance; that the right to exercise the option being in the sole discretion of appellee deprives the agreement of mutuality; that the "form of the decree" requiring him to execute an assignment of the lease, to execute documents for the transfer of the liquor permit, and providing that his interest in the business shall cease "one hour after the deposit of the monies heretofore provided", not being provided for in the agreement, rendered the decree "wholly nugatory."

The foregoing summary is followed by what are designated as "Proposition I", "Proposition II", "Proposition II-A", "Proposition III", and "Proposition IV". Under "Proposition I" is the capitalized heading "MUTUALITY OF OBLIGATIONS IS AN ESSENTIAL OF EVERY ENFORCEABLE AGREEMENT". This is followed by the citation of four cases and 17 C. J. S., p. 444, and quoted extracts from the said four cases. Under "Proposition II" is the capitalized heading "LIKEWISE, SPECIFIC PERFORMANCE WILL NOT BE DECREED AS TO AN AGREEMENT WHICH IS TOO INDEFINITE FOR ENFORCEMENT." Two cases are then cited and quoted extracts from the two cited cases are then set forth, concluding with assertion of appellant that there is "not time fixed for the exercise of the option" and "it is not clear under the terms of the contract whether the contingency of using alcoholic beverages must be such as 'actually' injures the business or would 'have a tendency to injure the business'."

Under "Proposition II-A" is the capitalized heading that "DECREE OF SPECIFIC PERFORMANCE MUST BE IN ACCORDANCE WITH THE TERMS OF CONTRACT. IF IT CANNOT BE, SPECIFIC PERFORMANCE MUST BE DENIED." Following this is a citation to 49 Am. Jur. 171, page 194. Appellant then says that there is no provision in the contract for the execution by him of a bill of sale, assignment of lease, and consent to transfer Alcoholic Beverage permit, and that the court cannot compel the appellant to do something he did not agree to do no matter if it is essential to the complete attainment of the contract.

Under "Proposition III" is the capitalized heading that "A CONTRACT CONTAINING NO SPECIFIC

TERMINATION IS TERMINABLE AT WILL." Two cases are there cited and a reference to the facts and holding of one of the cases is given.

Under "Proposition IV," is the capitalized heading that "WHERE THE DEFENDANT'S PERFORMANCE DEPENDS ON THE CONSENT OR APPROVAL OF ONE NOT A PARTY TO THE CONTRACT, WHO IS FREE TO WITHHOLD HIS CONSENT, SPECIFIC PERFORMANCE OF THE CONTRACT WILL NOT BE DECREED WHERE IT DOES NOT APPEAR THAT SUCH CONSENT OR APPROVAL HAS BEEN OR CAN BE OBTAINED." This is followed by reference to 81 C. J. S., §13(b), and the citation of a New Jersey case, with a quotation therefrom, and then reference to 81 C. J. S., §13(a), and four cited cases. A short discussion of the facts of one of the cited cases and a quoted statement purporting to be taken therefrom is set out.

At the end of each of said propositions is appellant's statement that the proposition and cited authorities are "directed" to certain "alleged errors" and certain of the assigned errors are mentioned.

It is clear that appellant's "Amended Argument" wholly fails to meet the requirements of Rule 2-17(e). Our Supreme Court has recently said that certain designated grounds of error in that case "are not supported by any *cogent* argument or citation of authorities. It is incumbent upon appellant on appeal, whether the cause be civil or criminal, to *affirmatively* show *harmful error* by argument and citation of authorities. Rule 2-17(e). Errors assigned and causes for new trial not so treated are deemed to be waived. Rule 2-17(f)." (Our emphasis.) *Wright* v. *State of Indiana* (1958), 237 Ind. 593,

595, 147 N. E. 2d 551. See also *Poore* v. *Poore* (1955), 125 Ind. App. 392, 394, 125 N. E. 2d 810. Appellant's argument in this case does not "affirmatively" show harmful error but simply casts before this court certain general contentions and abstract and incomplete legal pronouncements, with the apparent expectation that the court will rummage through the evidence and the decree of the trial court in quest of a suggested ground or reason for reversal of that court's determination of the action. We, of course, cannot assume the burden undertaken by and which rests upon the appellant.

The argument portion of an appellant's brief must do more than set out appellant's unapplied statements, ideas or suggestions that the trial court has erred in certain mentioned respects. With the privilege of grouping, as provided for in said Rule 2-17 (e), the argument should first direct the attention of the appellate tribunal to the particular assigned error, or to the particular specification in the motion for a new trial, as the case may be, upon which the appellant relies and intends to urge as an error warranting a reversal of the judgment appealed from. This should then be followed by a concise statement of the basis of objection to the complained of ruling, together with an exhibition of all pertinent points of fact and law sought to be presented and how they are applicable to the matter or particular error being discussed. Pertinent statutes, and authorities which support the points and contentions made, should be cited and, where deemed distinctively in point or particularly appropriate as analogous reasoning, quoted from.

In the brief at hand, appellant has referred to some treatises, has cited some cases, and has quoted from

some of them, but they have not been applied with cogent argument and direct or inferential ratiocination, to a designated error. Thus the court is left to read and decipher the doctrine of the cited cases, search for one or more of the assigned errors to which the doctrine might be applicable, and then analyze the evidence and construe the admitted documents with a view of ascertaining both whether some error has been committed and whether appellant has assigned that particular error on appeal. Such effort is not within the accepted function of the court.

Appellant has failed to affirmatively establish error and the judgment appealed from must be affirmed.

Judgment affirmed.

NOTE.—Reported in 159 N. E. 2d 134.