GIBSON *v*. KINCAID ET AL.

[No. 20,251. Filed December 13, 1966. Rehearing denied January 12, 1967. Transfer denied November 16, 1967.]

*Max Cohen,* of Gary, for appellant.

*M. Robert Sturman, Sturman, Sang & Carney,* and *Kleiman, Cornfield & Feldman,* all of Chicago, Illinois, and *Barce, Barce & Vann,* and *Sammons & Sammons,* both of Kentland, all for appellees.

PRIME, J.—The action below was brought by appellant, who is a steelworker, member of the United Steel Workers of America, and part-time radio announcer, alleging defamation of character in one instance by appellees Kincaid and Smith via the radio transmitting facilities of appellee South Shore Broadcasting Company, now Colby Broadcasting Corporation,

and in another by an unnamed newscaster over the same facilities.

Appellant's amended complaint proceeds on two theories, contained in three legal paragraphs. The trial court sustained demurrers to all three paragraphs submitted by appellees Kincaid and Smith individually, and jointly as representatives of the United Steel Workers of America, and by appellee South Shore Broadcasting Company. Appellant refused to plead over, and judgment was accordingly rendered in favor of appellees.

Appellant's assignment of errors presents his contention that the several demurrers should have been overruled.

The first two legal paragraphs of appellant-plaintiff's amended complaint are founded on the following words, resulting from conversation between appellees Kincaid and Smith, broadcast over the South Shore Broadcasting Company station during time purchased by the union.

"Charles Smith: We want to touch briefly on this matter of this man Hoot Gibson who as we understand it is a member of the National Rights to Work Committee is going to bring up an argument that he has going we consider fairly petty.

"Orval Kincaid: Yes, Charlie it is my understanding that this gentleman you mentioned has been attempting to sell himself to a number of anti-labor organizations throughout the country and in fact he told us himself in a local union meeting, Charlie, that he made some tours all over the country during the last steel strike and driving around in someone's big Cadillac and visiting all of the steel centers and then it is our understanding that when he came back he turned in his bill for his expense to the United States Steel Corporation and of course it is . . . he told us himself in a local union meeting the company refused to pay it and he couldn't understand why the company refused to pay it because he was working for them all the way around. That is a sample, Charlie, of some of the things we are confronted with. There has been a case filed, it is going through the regular channels. It has been appealed by him or his associates and it will be heard by the Board on Monday."

Legal paragraph I proceeds against Kincaid and Smith individually, and jointly as representatives of the United Steel Workers of America, for uttering the words, and legal paragraph II against the South Shore Broadcasting Company for publishing same. An identical discussion may be made of both paragraphs in reaching a determination of the sufficiency of either to withstand demurrer, since they are grounded on the same issue: The defamatory nature, if any, of the words complained of. In our opinion, the dialogue between Kincaid and Smith was not defamatory per se. It imputed to appellant Gibson nothing more than labor agitation, which has been held to be not libelous per se. *Wabash Railroad Co.* v. *Young* (1904), 162 Ind. 102, 69 N. E. 1003; *Montgomery Ward* v. *McGraw Hill,* 146 F. 2d 171 (7th Circ. 1944). The same rule would apply to an action based on slander.

If the subject matter of an alleged defamation is not defamatory per se, special damages must be alleged in the complaint. *Patton* v. *Jacobs* (1948), 118 Ind. App. 358, 78 N. E. 2d 789, reh. den. 1948, trans. den. 1948. The doctrine therein enunciated related to allegedly libelous collection letters, but we see no reason to limit it to that factual situation. See also *Rose* v. *Indianapolis Newspapers,* 213 F. 2d 227 (7th Circ. 1954).

The only averment of specific injury contained in legal paragraphs I and II is appellant Gibson's present inability to attain a high union office. No allegations appear that he suffered any impairment of present employment. Recovery should lie under this set of circumstances only for injury to one's present trade, business, or occupation. Damages would be a matter of pure speculation if the rule were otherwise. Thus, we are of the opinion that this portion of the complaint is within the limitation that words which are possibly injurious to some vague new future employment

will not give rise to a cause of action under either branch of defamation.

With this conclusion in mind, we turn to appellant Gibson's theory that the mechanical reproduction and subsequent republication over appellee's radio station of the conversation gave it sufficient permanence to render the words actionable within the tort of libel. Assuming the validity of appellant's contention, the requirement still exists that allegations of special damages be contained in the complaint. If it is not valid and the remarks were instead slanderous, appellant Gibson, observing the well settled law of slander, concedes that his complaint is fatally defective without a finding that he has sufficiently pleaded special damages therein. As set out above, special damages were inadequately pleaded, and the words were not defamatory per se. The trial court was therefore justified in sustaining the demurrers to legal paragraphs I and II.

The third legal paragraph of appellant's amended complaint proceeds solely against appellee South Shore Broadcasting Company, springing from the following words uttered by a newscaster and conveyed over appellee's facilities:

> "The executive board of the United Steelworkers Union (USW) upheld misconduct charges against a member of its Gary, Ind. Local 2697. The board met in closed session to hear the charges against A. B. Gibson that he 'slandered' *several members of the local.* (Our emphasis)

> "The slander charge against him was upheld during a trial at the local level. Gibson appealed to the executive board which turned him down today."

Appellant's contention is that the crime of slander was thereby imputed to him. This crime is defined by Burns' Indiana Statutes, § 10-3202.

> "Criminal slander.—It shall be unlawful and a misdemeanor for any person to make any false, defamatory or slanderous statement regarding *any other person,* or to make or repeat any false statement regarding any person,

which, if true, would subject such person to prosecution for a criminal offense, or to make or repeat any false statement regarding any person which injures or tends to injure such person either in name, character, general reputation or the pursuit and earning of a livelihood, Provided, That the person uttering such statements shall have had no good, sufficient and reasonable grounds for believing and considering the same to have been true, and on conviction shall be fined not less than twenty-five dollars ($25.00), nor more than five hundred dollars ($500.00), to which may be added imprisonment in the county jail or Indiana State Farm for any period not to exceed sixty (60) days. (Our emphasis)

If appellant's theory is followed, the statutory "any other person" would refer to the broadcast language "several members of the local." Assuming the falsity of the transmission, which we must for the purpose of determining the sufficiency of the complaint, we fail to see how "several members of the local," otherwise unamed, would suffer criminal sanctions. While the false imputation of criminal activity clearly gives rise to a cause of action for defamation, the imputation must bear some reasonably close relation to the legislative definition of the crime. This paragraph of appellant's complaint fails to draw or suggest the requisite clarity. Similarly, the unidentified "several members of the local" would hardly have their "name, character, general reputation, or the pursuit and earning of a livelihood" endangered by appellant Gibson's allegedly slanderous remarks.

It is unnecessary to decide what radio transmission should be included in the libel category, or comment on appellant's argument that the member of a labor union should be allowed to bring an action in tort against that organization, since the complaint was clearly insufficient on the grounds previously discussed.

The Supreme Court of the United States has recently decided two important cases which have relevance to the case before us here. We think it apropos to consider the reasoning

embraced by our highest court on the general proposition before us.

The case of *Ashton* v. *Kentucky*, 384 U. S. 195, 16 L. Ed. 2d 469, 86 S. Ct. 1407, decided May 16, 1966, arose from circumstances concerning the publication and distribution of certain pamphlets in Hazard, Kentucky, during a strike of coal miners in 1963. The pamphlets were critical of the Chief of Police, the County Sheriff and the owner of the local newspaper, accusing them of favoring the mine operators and of being strongly opposed to the miners. The opinion of the Court is quoted in part:

> "The indictment charged 'the offense of criminal libel' committed 'by publishing a false and malicious publication which tends to degrade or injure' the three named persons. The trial court charged that 'criminal libel is defined as any writing calculated to create disturbances of the peace, corrupt the public morals, or lead to any act, which, when done, is indictable.'

> "The court also charged that malice is 'an essential element of this offense' and falsity as well.

> "The Court of Appeals in affirming the judgment of conviction adopted a different definition of the offense of criminal libel from that given the jury by the trial court. It ruled that the element of breach of the peace was no longer a constitutional basis for imposing criminal liability. It held that the common-law crime of criminal libel in Kentucky is 'the publication of a defamatory statement about another which is false, with malice.'

> "We indicated in *Shuttlesworth* v. *Birmingham*, 382 U. S. 87, that where an accused is tried and convicted under a broad construction of an Act which would make it unconstitutional, the conviction cannot be sustained on appeal by a limiting construction which eliminates the unconstitutional features of the Act as the trial took place under the unconstitutional construction of the Act. We think that principle applies here. Petitioner was tried and convicted according to the trial court's understanding of Kentucky law, which defined the offense as 'any writing calculated to create disturbances of the peace. . . .'

> "We agree with the dissenters in the Court of Appeals who stated that: '. . . since the English common law of

criminal libel is inconsistent with constitutional provisions, and since no Kentucky case has redefined the crime in understandable terms, and since the law must be made on a case to case basis, the elements of the crime are so indefinite and uncertain that it should not be enforced as a penal offense in Kentucky.'

"The case is close to *Cantwell* v. *Connecticut,* 310 U. S. 296, involving a conviction of the common-law crime of inciting a breach of the peace. The accused was charged with having played in the hearing of Catholics in a public place a phonograph record attacking their religion and church. In reversing we said: 'The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. . . . Here we have a situation analogous to a conviction under a statute sweeping in a great variety of conduct under a general and indefinite characterization, and leaving to the executive and judicial branches too wide a discretion in its application.' Id., at 308.

"In *Terminiello* v. *Chicago,* 337 U. S. 1, we held unconstitutional an ordinance which as construed punished an utterance as a breach of the peace 'if it stirs the public to anger, incites dispute, brings about a condition of unrest, or creates a disturbance.' Id., at 3. We set aside the conviction saying:

" 'The vitality of civil and political institutions in our society depends on free discussion. As Chief Justice Hughes wrote in *De Jonge* v. *Oregon,* 299 U. S. 353, 365, it is only through free debate and free exchange of ideas that government remains responsive to the will of the people and peaceful change is effected. The right to speak freely and to promote diversity of ideas and programs is therefore one of the chief distinctions that sets us apart from totalitarian regimes.'

" 'Accordingly a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea.' (Id., at 4.) "

In the case of *Mills* v. *State of Alabama*, 384 U. S. 214, 16 L. Ed. 2d 484, 86 S. Ct. 1434, decided May 23, 1966, the Supreme Court of the United States reiterated its position in favor of free speech. This case arose out of the publishing of an editoral in the Birmingham Post-Herald, a daily newspaper, written by its editor, James E. Mills, which urged the people to adopt the mayor-council form of government. Mills was later arrested on a complaint charging that by publishing the editorial *on election day* he had violated a section of the Alabama Code which makes it a crime "to do any electioneering or to solicit any votes . . . in support of or in opposition to any proposition that is being voted on on the day on which the election . . . is being held." The trial court sustained demurrers to the complaint on the ground that the statute abridged freedom of speech and press in violation of the First and Fourteenth Amendments to the Constitution of the United States. The Alabama Supreme Court reversed the trial court saying, the press "restriction, everything considered, is within the field of reasonableness," and "not an unreasonable limitation upon free speech, which includes free press."

In reversing the Alabama Supreme Court, the Supreme Court of the United States said in part:

"The First Amendment, which applies to the States through the Fourteenth, prohibits laws 'abridging the freedom of speech, or of the press.' The question here is whether it abridges freedom of the press for a State to punish a newspaper editor for doing no more than publishing an editorial on election day urging people to vote a particular way in the election. We should point out at once that this question in no way involves the extent of a State's power to regulate conduct in and around the polls in order to maintain peace, order and decorum there. The sole reason for the charge that Mills violated the law is that he wrote and published an editorial on election day which urged Birmingham voters to cast their votes in favor of changing their form of government.

"Whenever differences may exist about interpretations of the First Amendment, there is practically universal

agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates, structures and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes. The Constitution specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars, see *Lovell* v. *Griffin*, 303 U. S. 444, to play an important role in the discussion of public affairs. Thus the press serves and was designed to serve as a powerful antidote to any abuses of power by governmental officials and as a constitutionally chosen means for keeping officials elected by the people responsible to all the people whom they were selected to serve. Suppression of the right of the press to praise or criticize governmental agents and to clamor and contend for or against change, which is all that this editorial did, muzzles one of the very agencies the Framers of our Constitution thoughtfully and deliberately selected to improve our society and keep it free. The Alabama Corrupt Practices Act by providing criminal penalties for publishing editorials such as the one here silences the press at a time when it can be most effective. It is difficult to conceive of a more obvious and flagrant abridgment of the constitutionally guaranteed *freedom of the press.*"

The right to freely discuss and comment upon topics of general interest and importance is not to be lightly regarded. Freedom of expression, will be curtailed only when a clear infringement upon another's rights occurs. Such infringement is not present here.

For the reasons set out herein, we find that the trial court committed no error in sustaining all demurrers to appellant-plaintiff's amended complaint, and its judgment is therefore affirmed.

Carson, J., concurs, Wickens, C. J., and Faulconer, J., concur with opinions.

## CONCURRING OPINION.

WICKENS, C. J.—I concur in the results obtained by Judges Prime and Faulconer in their opinions herein.

With due appreciation for the illumination cast by these opinions on the whole subject of defamation, I do not find the complaint to state a cause of action in any pleading paragraph thereof. No legal question separates us on the status of the complaint except as to Paragraph III.

The statement there that appellant "slandered" others, in my opinion fails to impute a crime without resort to extrinsic facts. The word "slander" may, as Justice Holmes said of a word generally, ". . . vary greatly in color and content according to the circumstances and time in which it is used." At the present time slander has been relegated to the category of a tort.

Criminal slander is practically unknown now. Although our Criminal Code carries a 1921 statute making slander a misdemeanor I am unable to find a reported case under it. I question if any other than a thorough researcher would know that slander might be considered a statutory crime in this state. As words are presently used I would say "slander" does not produce an impression of a crime.

I consider the alleged defamation of Paragraph III to be clear and unambiguous and susceptible only of accusing appellant of tortious action, therefore leaving no factual question for trial.

CONCURRING OPINION.

FAULCONER, J.—I concur in the result reached in the majority opinion. However, I am of the opinion that the judgment of the trial court should be affirmed for the following reasons.

This is an appeal from a judgment entered for defendants-appellees when plaintiff-appellant refused to plead over after the trial court sustained defendants' demurrers to plaintiff's amended complaint.

Plaintiff-appellant brought suit in three paragraphs of amended complaint. The first paragraph of amended complaint

was against appellees, Kincaid and Smith, and alleged that certain remarks made by said appellees while on a program sponsored by appellee, United Steelworkers of America, and broadcast over the radio station of appellee, South Shore Broadcasting Company, were defamatory to appellant. The second paragraph of amended complaint was against appellee, South Shore Broadcasting Company, and alleged that said appellee was negligent in failing to edit the script and delete therefrom defamatory language referring to appellant. The third paragraph of amended complaint was also against appellee, South Shore Broadcasting Company, and alleged that a certain news item broadcast over the radio station of said appellee by its newscaster, was defamatory to appellant. Joint and several demurrers filed by the respective defendants-appellees on the ground that the respective paragraphs of the amended complaint failed to state a cause of action were sustained by the trial court.

Appellees, Kincaid and Smith, argue that the remarks charged in Paragraphs I and II are not defamatory; that if they are defamatory they are not defamatory *per se* and, therefore, special damages must be alleged; and that the allegations are insufficient to show special damages. Appellee, South Shore Broadcasting Company,[1] (by change of name, Colby Broadcasting Company), argues that the remarks alleged in Paragraph II and the news item alleged in Paragraph III of the amended complaint are 1) not defamatory and, if so, are not defamatory *per se* and, therefore, special damages must be alleged and such allegations are insufficient to show special damages.

Appellant argues that both, the remarks made by appellees, Kincaid and Smith, alleged in Paragraphs I and II, and the news item alleged in Paragraph III, were broadcast over the radio station owned by appellee-Colby and, therefore, were libel and, consequently, it was not necessary to plead or

1. Hereinafter referred to as appellee-Colby.

prove special damages and, even if required, its allegation of special damages was sufficient.

The alleged defamatory remarks upon which Paragraphs I and II are based consisted of the following colloquy between appellees, Kincaid and Smith, alleged to have been made over the radio station of appellee-Colby, in a program sponsored by appellee, United Steelworkers of America:

"Charles Smith: We want to touch briefly on this matter of this man Hoot Gibson who as we understand it is a member of the National Rights to Work Committee is going to bring up an argument that he has going we consider fairly petty.

"Orval Kincaid: Yes, Charlie it is my understanding that this gentleman you mentioned has been attempting to sell himself to a number of anti-labor organizations throughout the country and in fact he told us himself in a local union meeting, Charlie, that he made some tours all over the country during the last steel strike and driving around in someone's big Cadillac and visiting all of the steel centers and then it is our understanding that when he came back he turned in his bill for his expense to the United States Steel Corporation and of course it is . . . he told us himself in a local union meeting the company refused to pay it and he couldn't understand why the company refused to pay it because he was working for them all the way around. That is a sample, Charlie, of some of the things we are confronted with. There has been a case filed, it is going through the regular channels. It has been appealed by him or his associates and it will be heard by the Board on Monday."

Although both parties expend vast energy and space on the issue whether defamatory words published over the airways of a radio broadcasting station are libel or slander, or a seprate tort, it is my opinion that it is unnecessary, for a determination of this appeal, that we decide that intriguing, complex and interesting question. The few decisions on this issue are in conflict, as are the comments of the scholars, and the future speculations and recommendations are, indeed,

varied and unique. With the continued refinement of methods of mass communication the law is faced with a complex problem, the solution of which may be impossible under present legal remedies.

It has been held that a radio broadcast from a script containing defamatory matter constitutes libel rather than slander: *Gibler* v. *Houston Post Company* (1958), (Tex. Civ. App.), 310 S. W. 2d 377; *Charles Parker Co.* v. *Silver City Crystal Co.* (1955), 142 Conn. 605, 116 A. 2d 440; *Barry* v. *Kirkland* (1948), 149 Neb. 839, 32 N. W. 2d 757, 759; *Hartmann* v. *Winchell* (1947), 296 N. Y. 296, 73 N. E. 2d 30, 171 A. L. R. 759; *Hryhorijiv* v. *Winchell* (1943), 180 Misc. 575, 45 N. Y. S. 2d 31, 32, 33; *Sorensen* v. *Wood, et al.* (1932), 123 Neb. 348, 243 N. W. 82, 82 A. L. R. 1098; but extemporaneous interpolations, not in the script, if actionable as defamation, have been considered as slander. *Locke* v. *Gibbons* (1937), 164 Misc. 877, 299 N. Y. S. 188, 193; *Hartmann* v. *Winchell, supra.*

It has been intimated that the distinction between libel and slander is inapplicable to radio broadcasting. *Purcell* v. *Westinghouse Broadcasting Co.* (1963), 411 Pa. 167, 191 A. 2d 662; *American Broadcasting—Paramount Th.* v. *Simpson* (1962), 106 Ga. App. 230, 126 S. E. 2d 873; *Greer* v. *Skyway Broadcasting Co.* (1962), 256 N. C. 382, 124 S. E. 2d 98; *Niehoff* v. *Congress Square Hotel Co.* (1954), 149 Me. 412, 103 A. 2d 219; *Summit Hotel Co.* v. *National Broadcasting Co.* (1939), 336 Pa. 182, 8 A. 2d 302, 124 A. L. R. 968; *Irwin* v. *Ashurst* (1938), 158 Ore. 61, 74 P. 2d 1127, 1129; *Kelly* v. *Hoffman* (1948), 137 N. J. L. 695, 61 A. 2d 143, 145, 5 A. L. R. 2d 951, 954; 53 C. J. S., *Libel and Slander*, § 121(c), p. 200. Harum, *Remolding of Common Law Defamation*, 49 A. B. A. Journal 149 (1963); Korbel, *Defamation by Broadcast: The Need for Federal Control*, 49 A. B. A. Journal 771 (1963); Leflar, *Radio and TV Defamation—"Fault" or Strict Lia-*

*bility?* 15 Ohio St. Law Journal 252 (1954) ; Remmers, *Recent Legislative Trends in Defamation by Radio,* 64 Harv. L. Rev. 727 (1951) ; Socolow, *The Law of Radio Broadcasting,* Vol. 2, pp. 851-52, 868 (1939).

Although Indiana and most other jurisdictions recognize the common law distinction between libel and slander, this view has been criticised by scholars as archaic and its abolition is strongly advocated. The following are a few of the many legal works concerning this controversial issue. Lovell, *The "Reception" of Defamation by the Common Law,* 15 Vand. L. Rev. 1051 (1962) ; Harum, *Remolding of Common Law Defamation,* 49 A. B. A. Journal 149 (1963), *supra;* Leflar, *Radio and TV Defamation—"Fault" or Strict Liability?* 15 Ohio St. Law Journal 252 (1954), *supra;* Note, Pollard, 29 Notre Dame Law. 128, 132 (1953).

Defamation is an invasion of the interest in reputation and good name and is made up of the twin torts of libel and slander.

There appears to be some confusion and conflict among the decisions and scholars in determining when special damages, or as sometimes stated, special injury, must be alleged and proven in an action for defamation.

In the law of libel and slander the terms *"per se"* and *"per quod"* have been used, abused, misused and confused. As stated by Prosser,

> "A publication may be defamatory upon its face; or it may carry a defamatory meaning only by reason of extrinsic circumstances. The distinction is not the same as that between defamation which is actionable of itself and that which requires proof of special damage, . . . There has been no little confusion as to this, sometimes with unfortunate results." Prosser, Torts, §106, p. 766 (3d ed. 1964).

In an attempt to presently avoid any confusion resulting from previous inconsistent usage of these terms, for the purpose of this opinion, the words *"per se"* and the words *"per*

*quod"* shall be used only with reference to the defamatory meaning of words.

The term *"defamatory per se"* shall be taken to designate words whose defamatory imputation is apparent on their face; that is, words which are defamatory in and of themselves. The term *"defamatory per quod"* shall be understood to mean words whose defamatory character is apparent only by reason of extrinsic facts and circumstances; that is, language which, while not defamatory on its face, is capable of communicating a defamatory meaning when taken with certain extrinsic facts and circumstances.

It is generally agreed that words are actionable without allegation and proof of special damage when:

(1) Words, whether they be in the form of libel or slander, which are defamatory *per se* or *per quod,* which (a) impute to another the commission of an indictable offense punishable by imprisonment; (b) impute to another a loathsome disease; (c) tend to injure another in his office, profession, trade, business or calling; or (d) impute unchastity to a woman.

(2) Words in the form of libel which, on their face, without resort to extrinsic facts or circumstances, that is to say, *"per se,"* tend to degrade another person, impeach his honesty, integrity, or reputation, or bring him into contempt, hatred, ridicule, or causes him to be shunned or avoided.

All other words, in the form of slander, which cannot be fitted into the above categories designated (a) through (d) are actionable only upon allegation and proof of special damage or harm.

The decisions and writers are not in agreement, however, concerning whether words, in libelous form, which are only defamatory *per quod* require allegation and proof of special damage where the defamatory character of the words is outside of the four categories above set forth. Prosser, Torts,

§ 107, pp. 780-781-782 (3d ed. 1964); Harper & James, The Law of Torts, § 5.9, pp. 373-74 (1956).

As stated above, if the words, libelous in form, are defamatory in and of themselves *(per se)* but do not fit within one or more of the above categories designated (a) through (d), they are actionable without allegation and proof of special damages. *Gabe* v. *McGinnis* (1879), 68 Ind. 538; *Wayne Works* v. *Hicks Body Co.* (1944), 115 Ind. App. 10, 55 N. E. 2d 382; *Tracy* v. *Hacket* (1898), 19 Ind. App. 133, 49 N. E. 185.

However, in those jurisdictions designated "majority" by Prosser, and "minority" by Harper, where the defamatory character of the words does not fit within one of the above categories designated (a) through (d), and the defamatory meaning of the words is shown only by reference to extrinsic facts and circumstances, then special damages must be alleged and proven. *Patton* v. *Jacobs* (1948), 118 Ind. App. 358, 362-63, 78 N. E. 2d 789 (Transfer denied); *Kelly* v. *State* (1900), 24 Ind. App. 639, 57 N. E. 257; Prosser, Torts, § 107, pp. 780-81-82, (3d ed. 1964), *supra;* Restatement of Torts, 2d, Tentative Draft No. 11, § 569 (1966); Harper & James, The Law of Torts, § 5.9, pp. 372-73 (1956), *supra;* 53 C. J. S., *Libel and Slander,* § 170 (b), (c), pp. 268-69; § 13, pp. 57-58; 33 Am. Jur., *Libel and Slander,* § 5, pp. 40-41.

The Restatement of Torts, 2d, Tentative Drafts Nos. 11 and 12 (1966), exhaustively treat the reasons for and against both doctrines.

Without carefully examining the text and decisions one could easily mistake the law to be that if the words are defamatory *per se,* that is, their defamatory imputation is apparent in the words themselves, no special damages need be alleged and proven, and that the rule is otherwise if defamatory meaning of the words can only be determined in reference to extrinsic facts and circumstances. The rule, however, is not that simple.

Words, whether in libel or slander form, which do not, on their face, impute to another a crime, loathsome disease, unchastity, or injure another in his business, trade or profession, may still be actionable without alleging and proving special damages, if, by pleading and proving extrinsic facts and circumstances, such defamatory meaning is shown.

> "Words not actionable *per se* may be made actionable by averring such extrinsic facts as will show that they were intended to be slanderous, and were so understood. These averments must be distinctly stated in the *inducement*, applied to the plaintiff by a proper *colloquim*, with the intended and understood meaning correctly set out in the *innuendoes.*" (Emphasis supplied.) *Works* v. *Stevens* (1881), 76 Ind. 181, 184; *Emig* v. *Daum* (1891), 1 Ind. App. 146, 151-152, 27 N. E. 322.

> "Where the defamatory words are not libelous *per se,* and are ambiguous or equivocal, then extrinsic matter must be averred to show the objectionable character of the words . . . used." *Kelly v. State, supra* (1900), 24 Ind. App. 639, 641-42, 57 N. E. 257.

How, in an action for defamation, one properly pleads the defamatory meaning of words, not defamatory on their face, is set forth in Restatement of Torts, § 563, Comment (f), pp. 149-150, as follows:

> "In framing a declaration for defamation, when the defamatory meaning of the communication or its applicability to the plaintiff depends upon extrinsic circumstances, the pleader avers their existence in a prefatory statement called *the 'inducement.'* In what is ordinarily called the *'colloquium,'* he alleges that the publication was made of and concerning the plaintiff and of and concerning the extrinsic circumstances. The communication he sets forth verbatim and in the *'innuendo'* explains the meaning of the words." (Emphasis supplied.)

See also: Prosser, Torts, § 106, pp. 766-67 (3d ed. 1964), *supra;* 33 Am. Jur., *Libel and Slander,* §§ 236-241, pp. 214-221; 18 I. L. E., *Libel and Slander,* § 82, pp. 487-89.

It is not enough to set out the words and then say by innuendo what they are intended to mean. The innuendo can-

not change the natural meaning of the words or aver a fact. This must be done by inducement. *Rock* v. *McClarnon* (1884), 95 Ind. 415, 417; *Dean* v. *Miller* (1879), 66 Ind. 440; *Hart* v. *Coy* (1872), 40 Ind. 553; *Kelly* v. *State, supra* (1900), 24 Ind. App. 639, 57 N. E. 257; *Emig* v. *Daum, supra* (1891), 1 Ind. App. 146, 27 N. E. 322.

Words must be taken in their entirety and understood in their plain and natural import, according to the idea they are calculated to convey to whom they are addressed. *Garrett* v. *Bissel Chilled Plow Works* (1900), 154 Ind. 319, 320, 56 N. E. 667; 18 I. L. E., *Libel and Slander,* § 12, p. 453.

With the above general principles in mind, an examination of Paragraphs I and II of appellant's amended complaint, in my opinion, fails to state a cause of action for defamation whether considered as libel or slander. The alleged words could not be considered defamatory *per se* by any stretch of that term. Neither on their face nor considered with the other allegations of the amended complaint, do the words impute to appellant a crime or disease. Do they tend to injure him in his trade, business or occupation? Appellant alleges no extrinsic facts showing that the words would so injure him in his trade, business or occupation. Appellant only alleges that he was a member of Local 2697 of the United Steelworkers of America in good standing; employed as a steelworker for National Tube Company; was employed part-time as a radio announcer for radio station WGRY in Gary, Indiana; and that he had a good standing in his community.

Appellant alleges that the imputation of the words was that he was a cheat, fraud, labor spy, anti-union and a strikebreaker. This allegation cannot change or enlarge upon the natural meaning of the words.

> "In order to make words, either written or spoken of or concerning a person engaged in a particular calling, actionable per se, they must be written or spoken of the person in relation to his or her occupation." 18 I. L. E., *Libel and Slander,* § 26, p. 466; § 84, p. 492.

Appellant's occupation was not as an officer or employee of the Union. There is no showing that his standing in the Union would affect his occupation, nor can we infer such effect from the facts alleged.

If broadcasting were to be considered libel, could the words set out in Paragraphs I and II be reasonably interpreted, in and of themselves, to disgrace or injure appellant's reputation or bring him into contempt, hatred or ridicule? Appellant alleges that the words imputed that he was "a person to be avoided, shunned, despised, held in public contempt and contumely."

The words set forth, in my opinion, do not, in and of themselves, convey the meaning alleged by the appellant. If extrinsic facts and circumstances are sufficiently alleged to show these defamatory characters alleged by appellant, they would only be actionable by allegation of special damage under the law discussed above.

Our Supreme Court in *Pollock* v. *Hastings* (1882), 88 Ind. 248, at page 250, stated, "It is not slander *per se* to charge a man with fraud, or to say of him that he is a cheat or a swindler."

To call one a labor agitator is not libelous *per se*. *Wabash R. Co.* v. *Young* (1904), 162 Ind. 102, 107, 69 N. E. 1003, 4 L. R. A., N. S., 1091.

"In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution." *Thornhill* v. *Alabama* (1940), 310 U. S. 88, 102, 84 L. Ed. 1093, 60 S. Ct. 736.

Appellant contends that all libel is actionable without proof of special damage. This is not my understanding of the decisions in Indiana. Although I have neither found nor been referred to a decision in Indiana which discusses the *per se, per quod* doctrine, from the decisions, I am of the opinion that Indiana applies the distinction between words defamatory

*per se* or *per quod* to the tort of defamation. *Wayne Works* v. *Hicks Body Co.* (1944), 115 Ind. App. 10, 55 N. E. 2d 382, *supra; Bain* v. *Myrick* (1882), 88 Ind. 137.

The decisions set forth by appellant to substantiate his contention that all libel is actionable without allegation and proof of special damages clearly show that the words in those decisions were found to be defamatory *per se.*

The damages appellant avers in Paragraphs I and II of his amended complaint are.

> "7. That since the publication of said words concerning the plaintiff and because of the publication of said words concerning the plaintiff, plaintiff has been held in low repute by his fellow union members; that plaintiff has been avoided, shunned and despised by his fellow union members as a direct result of the publication of the aforesaid words by the defendants; that plaintiff desired to further his career in the internal management of the union; that many of the officers of said union are paid salaries ranging from Ten thousand ($10,000.00) Dollars to Seventy-five [thousand] ($75,000.00) Dollars per year; that because of the low repute in which plaintiff is now held by his fellow union members it will be impossible for him to gain employment as one of the officers of said union."

In *Miller, et al.* v. *Long* (1956), 126 Ind. App. 482, at page 497, 131 N. E. 2d 348 (Transfer denied), the court said:

> " 'Special damages are such as *actually* result from the wrong done but which do not *necessarily* result therefrom, and for that reason are not implied by law, and to be recovered must be specially alleged and proven.' . . . [S]pecial damages always arise from or grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not to the other, and follow as a natural and proximate consequence of the wrongful act by reason of the special circumstances or conditions existing in the particular case." Quote from *Aufderheide* v. *Fulk* (1916), 64 Ind. App. 149, 112 N. E. 399.
>
> " 'Special' damage means that the loss sustained by the plaintiff must be a particular loss, supported by specific evidence." Harper & James, § 5.14, p. 387 (1956). See also: Annot., 86 A. L. R. 848 (1933).

Where special damages must be alleged, they must be averred with particularity.

"If the language used in the article was not libelous *per se,* if extrinsic facts and explanations were needed to show how it would be injurious, the plaintiffs were required to allege the *special, specific damage* that resulted from its publication." (Emphasis supplied.) *Hambric* v. *Field Enterprises, Inc.,* (1964), 46 Ill. App. 2d 355, 196 N. E. 2d 489, 491.

This Court in *Patton* v. *Jacobs, supra* (1948), 118 Ind. App. 358, at pages 362-63, 78 N. E. 2d 789 (Transfer denied), held that there was no allegation of special damages in the complaint averring "she suffered and continues to suffer great mental pain, anguish and humiliation and has become ill and sick from worry and anxiety concerning the injury to her good name. . . ."

I am of the opinion that the allegations contained in Paragraphs I and II of appellant's amended complaint are descriptive of general damages only, and are too nebulous concerning future possibilities.

We are not concerned, *at this point,* with the defenses to suits for defamation since they, or facts establishing them, do not appear on the face of plaintiff's amended complaint and, therefore, are not available on demurrer. *Henderson* v. *Evansville Press, Inc.* (1957), 127 Ind. App. 592, 598, 142 N. E. 2d 920, (Transfer denied). Nor are we concerned with the issue whether the doctrines of "strict liability" versus "fault" should apply in the field of radio defamation.

We are not controlled, under the facts here, by the decision of the United States Supreme Court in *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A. L. R. 2d 1412, which prohibits a "public official" from recovering for defamation unless he proves malice defined by the court as "with knowledge that is was false or with reckless disregard of whether it was false or not." Nor are we controlled at this time by those decisions extending

the *Times* rule to private persons who project themselves into public affairs to the extent that they become "public men."

The fact that the alleged defamatory words were recorded and re-broadcast, which would give some support to holding that they should be treated as libel, will not aid appellant. Even considered as libel, such words would have to be defamatory *per se* if their character did not fit within one of the above categories (a) through (d) to state a cause of action without alleging special damage.

Since I conclude that the alleged words set forth in Paragraphs I and II of plaintiff-appellant's amended complaint were actionable only by allegation of special damages, and that the damages alleged do not meet the requirements of special damages, the trial court committed no error in sustaining defendants-appellees' demurrers to Paragraphs I and II of plaintiff-appellant's amended complaint.

In Paragraph III of plaintiff-appellant's amended complaint the alleged defamatory words were contained in a news item alleged to have been broadcast by an employee of defendant-appellee-Colby's radio station, which news item, it is alleged, appellee obtained from United Press International. A demurrer for insufficient facts was also sustained to this paragraph. The news item alleged to have been broadcast is as follows:

"The executive board of the United Steelworkers Union (USW) upehld [upheld] misconduct charges against a member of its Gary, Ind. Local 2697. The board met in closed session to hear the charges against A. B. Gibson that he 'slandered' several members of the local. The slander charge against him was upheld during a trial at the local level. Gibson appealed to the executive board which turned him down today."

Since plaintiff-appellant's allegation of damages is the same in Paragraph III as in Paragraphs I and II of his amended complaint, the sustaining of the demurrer to Paragraph III was not error if the above news item, if considered as libel,

was not defamatory *per se,* or, if considered as either libel or slander, the words, in and of themselves, or considered with extrinsic facts, do not impute to the appellant a crime, loathsome disease or injure him in his trade, business or occupation.

Slander is a misdemeanor in Indiana punishable, on conviction, by a fine to which may be added imprisonment for any period not exceeding 60 days. Acts 1921, ch. 140, § 1, p. 366, § 10-3202, Burns' 1956 Repl.

"Where the defendant utters words charging the plaintiff with an indictable offence punishable by imprisonment, the words are, as a general rule, deemed slanderous per se. . . ." *Seller* v. *Jenkins* (1884), 97 Ind. 430, 431; *Greater* v. *Hogan* (1891), 2 Ind. App. 193, 195, 28 N. E. 209; *State ex rel.* v. *Killigrew* (1931), 202 Ind. 397, 401-402, 174 N. E. 808, 74 A. L. R. 631; *Wyant* v. *Smith* (1840), 5 Blackf. 293, 294.

All public offenses, except treason and murder, may be prosecuted by an indictment or affidavit. *Rogers* v. *State* (1937), 212 Ind. 593, 594, 10 N. E. 2d 730. Misdemeanors may be prosecuted by an indictment. *Miller* v. *The State* (1896), 144 Ind. 401, 404-405, 43 N. E. 440; *Douglass et al* v. *The State* (1880), 72 Ind. 385, 390.

It is not necessary that the words uttered should be such as describe the offense imputed by them with technical accuracy. It is, however, necessary that the words uttered should be such as to convey to the minds of the hearers an imputation of crime. If the words used are such as to produce upon the minds of those who hear them an impression that the plaintiff was guilty of a crime, they are actionable, although they may not fully describe an offense. And if the words taken altogether are such as in their popular or ordinary signification charge a crime, then they are slanderous *per se. Buscher* v. *Scully* (1886), 107 Ind. 246, 247, 5 N. E. 738, 8 N. E. 37; *Seller* v. *Jenkins, supra* (1884), 97 Ind. 430, 431; *Wilson* v. *McCrory* (1882), 86 Ind. 170, 171; *Waugh* v. *Waugh* (1874), 47 Ind. 580, 584; *Proctor* v. *Owens* (1862),

18 Ind. 21, 22; *Short* v. *Acton* (1904), 33 Ind. App. 361, 363-64, 71 N. E. 505; *Ruble* v. *Bunting* (1903), 31 Ind. App. 654, 656, 68 N. E. 1041. 18 I. L. E., *Libel and Slander*, § 22, p. 458.

Where the language complained of is clear and unambiguous and susceptible of but one meaning or construction, it is the duty of the court to determine whether it is actionable, either *per se* or *per quod*, but where it is ambiguous, of doubtful import, or susceptible of two or more interpretations, its actionability must ordinarily be decided by the jury under appropriate instructions from the court. 33 Am. Jur., Libel and Slander, § 294, p. 277; Harper & James, The Law of Torts, § 5.29, pp. 463-73; Prosser, Torts, § 106, p. 765; Restatement of Torts, § 614, p. 304.

> "[I]f the language is ambiguous and susceptible of two meanings, one defamatory and the other not, it is for the jury to decide whether or not it was used in the defamatory sense." 18 I. L. E., *Libel and Slander*, § 132, p. 530; *Waugh* v. *Waugh, supra* (1874), 47 Ind. 580, 585; *Cosand* v. *Lee, supra* (1894), 11 Ind. App. 511, 38 N. E. 1099.

Appellant's argument concerning the action of the trial court in sustaining appellee-Colby's demurrer to Paragraph III of appellant's amended complaint is confined to one contention, "Imputation of the Commission of a Crime is Actionable Per se." Appellant sets forth the criminal libel and criminal slander statutes in Indiana, then states:

> "If this court holds that defamatory matter disseminated over a radio station constitutes libel, the imputation of the criminal offense is that of criminal libel. However, it is not necessary for the court to hold that radio station transmissions constitute libel in order to render the publication in question actionable since the imputation of the offense of criminal slander is clear and unequivocal."

I have grave doubt concerning the accuracy of appellant's first sentence in the above quoted statement, and the conclusion in the second sentence is unsupported by any application to the facts of this cause.

Appellant's total argument, concerning Paragraph III, consists of conclusions unapplied to facts, statements of general law supported by references to the Restatement of Torts (once), Newell, *Slander and Libel* (twice), one Alabama decision, and one Illinois decision.

It is, of course, axiomatic that this court, on appeal, is under no duty to search the record in order to reverse the trial court, and it is the duty of appellant not only to present and argue each error he contends requires reversal, but to support such argument with citation of authority and application to the facts of the case.

> "The entirety of appellant's argument, in his brief, consists only of his stated conclusions, accompanied by unanswered questions. The burden is upon appellant on appeal to show error by the record, not by suggested avenues of investigation by this court. It has been held by the Supreme Court and this court that, under said Rule 2-17 (e), the appellant on appeal must show harmful error by cogent argument and citation of authorities. *Wright* v. *State* (1958), 237 Ind. 593, 595, 147 N. E. 2d 551; *Ecker* v. *Fuchs* (1959), 129 Ind. App. 555, 566, 567, 159 N. E. 2d 134." *Chadwick et al.* v. *Baughman et al.* (1963), 134 Ind. App. 305, 311, 187 N. E. 2d 588.

In my opinion, appellant's argument as it concerns the alleged error in the sustaining of the demurrer by the trial court to Paragraph III of appellant's amended complaint fails to meet the requirements of Rule 2-17(e), Rules of the Supreme Court, and, therefore, any error in this action of the trial court has been waived.

For the above reasons I concur with the majority opinion that the judgment should be affirmed.

NOTE.—Reported in 221 N. E. 2d 834.