HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS' INTERNAT'L UNION *v.* JULIE'S RESTAURANT.

[No. 20,602. Filed February 16, 1968. No petition for rehearing filed.]

*Max E. Hobbs*, of Fort Wayne, and *Brown & Gettler*, of Cincinnati, Ohio, for appellant.

*Korn, Wyss, McCain, Mochamer & Waterman, Robert S. McCain*, and *Norbert L. Wyss*, of Fort Wayne, for appellee.

SMITH, J.—This is a civil action brought by the appellee-plaintiff against the appellant-defendant for damages based upon an alleged libel of the appellee by the appellant and certain other parties named in appellee's complaint.

Appellee's first paragraph of amended complaint alleged in substance that appellee conducted a restaurant business in the City of Fort Wayne; that he relied on said business for support; that the appellant was a labor organization; that the appellant had a local affiliated union (also made a party to this action) which employed various officers and agents; that on or about September 10, 1963, the appellant and its agents maliciously published a libelous handbill concerning appellee; that by reason of the alleged libelous publication, the business of the appellee fell off; that the facts in the publication were false, and that appellee was damaged thereby.

Appellant by its answer to appellee's first paragraph of amended complaint denied each and every material allegation contained in said complaint.

The second paragraph of appellee's complaint alleged in substance substantially the same matters as were alleged in the first paragraph, with the exception that appellee further alleged that appellant and the other defendants *intended to destroy appellee's reputation in his business.*

Appellant by its answer to appellee's second paragraph of complaint admitted that the appellant was an unincorporated labor organization and that the defendant Purkerson was a member and international representative of the appellant;

and denied all the other allegations of the second paragraph of the complaint.

Trial was had by jury, which returned the verdict for appellee in the sum of Eight Thousand Dollars ($8,000). Appellant filed a motion for a new trial, which was overruled, and judgment was duly entered for appellee in accordance with the verdict. The judgment reads as follows:

"It is, therefore, ordered, adjudged and decreed by the Court that plaintiff Julio Zurzolo d/b/a Julie's Restaurant have and recover of and from the defendants Cliff Purkerson, individually and The Hotel and Restaurant Employees and Bartenders International Union, an unincorporated association and all its members, the sum of Eight Thousand ($8,000.00) Dollars."

Appellant's motion for a new trial, in part, reads as follows:

"The defendants Cliff Purkerson and Hotel and Restaurant Employees and Bartenders International Union in the above entitled cause move the Court for new trial thereof for the following reasons, to wit:

1. The Court erred in overruling defendant's motion and application for a continuance of this cause and which said application was for a continuance on the ground of the absence of the defendant, Cliff Purkerson, and which said application and motion was supported by the affidavit of Robert Barbieri, attorney for said defendant.

2. The verdict of the jury is not sustained by sufficient evidence.

3. The verdict of the jury is contrary to law.

4. The damages assessed by the jury are excessive.

. . . ."

Specification No. 6 in the motion for a new trial concerned the refusal of the court to give instructions requested by said defendant.

Specification No. 7 concerned the admission in evidence, over the objection of all the defendants, of Plaintiff's Exhibit No. 1.

Specification No. 8 concerned the admission in evidence, over the objection of all the defendants, of Plaintiff's Exhibit No. 2.

Specification No. 9 concerned the admission in evidence, over the objection of the defendants, of plaintiff's testimony as to loans procured, sale of his automobile, and a statement of his personal expenses, because said evidence was irrelevant, immaterial and incompetent evidence and tended to neither prove nor disprove any issue in this cause.

Specification No. 10 concerned the refusal of the court to submit to the jury interrogatories requested by the defendants.

Specification No. 11 concerned the irregularity in the proceedings of the court and the jury by reason of the fact that the jury returned Interrogatory No. 10 with an indication that said jury was split by a vote of nine "yes" and three "no" in its answer to said interrogatory.

The sole error assigned is the overruling of a motion for a new trial.

Paragraph 1 of the amended complaint appears to be based upon libel *per se* and paragraph 2 on libel *per quod*.

The court's Final Instruction No. 1 reads as follows:

"The court instructs you that there are two kinds of civil libel, libel per se and libel per quod.

"Libel per se is a libel where the printed words are of such defamatory nature that the words import and are injurious in their character, and in such a case injury may be presumed.

"Libel per quod is one where the words used are not defamatory or injurious standing alone. In such a case, the complaint must allege an inducement or reason to use the words and the meaning and injurious quality of the words used as understood by people generally in the area where they were used.

"The plaintiff has filed two pleading paragraphs of complaint. The Amended Pleading Paragraph One of Plaintiff's Complaint alleges a libel per se. Pleading Paragraph Two of the Plaintiff's Complaint alleges a libel per quod. The Court now instructs you that the printed words, or circular,

which the plaintiff alleges were printed and published by the defendants and which was introduced into evidence as Plaintiff's Exhibit No. 1, are not of such a nature as to constitute a libel per se. The Court, therefore, withdraws Plaintiff's Amended Pleading Paragraph One of Complaint from your consideration and directs you to return a verdict for the defendants on Plaintiff's Amended Pleading Paragraph One of Complaint. When you retire for your deliberations, you shall consider only Plaintiff's Pleading Paragraph Two, which alleges a libel per quod."

Therefore, it appears that the issue of libel *per se* was withdrawn from the consideration of the jury and that the case was submitted on Paragraph Two of the amended complaint, the theory of which paragraph is libel *per quod*. It is elementary, and we will not belabor this opinion with a recital of authorities, that this court cannot weigh the evidence, and that the weight of the evidence and the credibility of witnesses is the province of the trial court or jury and not the reviewing court.

It is also an elementary rule in Indiana that where evidence is conflicting, the reviewing court will consider only the evidence most favorable to the party in whose favor the judgment was entered. *Myles* v. S*tate of Indiana* (1955), 234 Ind. 129, 124 N. E. 2d 205 and 206.

From an examination of the record it appears that the evidence most favorable to the appellee is as follows: In 1956 the appellee, Julio Zurzolo, purchased a restaurant business for $4,800. Over the years Mr. Zurzolo made improvements to the building, amounting to approximately $6,000. In addition to that investment, the appellee made internal improvements, amounting to $10,000.

The restaurant business was located approximately a block and a half from the General Electric plant in Fort Wayne, Indiana. Approximately 90% of the customers of the restaurant were employees of General Electric.

Sometime before September 10, 1963, a man named Harold Harris came to appellee's restaurant and left a business card

with his name on it, and advised that appellee should contact him.

The next day the appellee received a telephone call from Mr. Harris in which Mr. Harris identified himself with the appellant union. The appellee advised Mr. Harris that he would be welcome to come to the restaurant and talk to the employees concerning membership in the union; however, Mr. Harris said that he wanted the appellee to sign the union contract before he contacted the employees. Mr. Harris used violent language in his telephone conversation, whereupon the appellee hung up the phone. The following day pickets were placed in front of the appellee's restaurant, and immediately thereafter the business of the appellee started to fall off. The following day a man called the appellee and identified himself as Cliff Purkerson, and asked the appellee if he was ready to sign the union contract; and that if he didn't sign such a contract, the appellee would have no business, and that Mr. Purkerson would double the number of pickets. Mr. Purkerson then made some vulgar remarks about the appellant's mother and asked him if his children and wife were all right. The appellee then hung up the phone and discontinued his conversation with Mr. Purkerson.

Approximately four days later, two boys knocked on the door of the appellee; and after a conversation with the boys, the appellee discovered sugar in his gas tank. The pickets stayed in front of appellee's restaurant for approximately three or four weeks. Sometime after September 10, 1963, employees from the General Electric plant came to appellee's restaurant and handed the appellee and his cook certain leaflets. After receiving the leaflets, the appellee went to the General Electric plant and witnessed two persons passing out said leaflets to the employees. The written material set forth in the leaflet is now identified as Plaintiff's Exhibit No. 1.

Two weeks preceding September 10, 1963, the appellee served on the average of 60 to 75 customers every noon. Af-

ter September 10, 1963, and for a period of approximately two weeks, the noon lunch business dropped off to 20 to 25 customers.

Betty Stout testified that she was President of Local 211, Hotel and Restaurant Employees and Bartenders International Union, during the month of September, 1963. She stated that she knew Cliff Purkerson both socially and in a business way. She stated that she was present and heard Mr. Purkerson make a telephone call to the appellee during the week of September 10, 1963, and that in said telephone conversation Mr. Purkerson used a lot of dirty words which she refused to repeat to the jury. She said that he made remarks about the appellee's mother and that appellee's wife was having an affair with a colored man. She examined Plaintiff's Exhibit No. 1 and stated that she had seen the document in the office of the union hall and that Mr. Purkerson had composed it. She said that Local No. 211 hired people to pass out handbills or circulars, and that these people were hired from the Mission. She further stated that she resigned from the union because she didn't like the way it was being operated.

Harold Harris testified that he knew the defendant Cliff Purkerson and first met him in September of 1963. He said he was hired as a business agent for the local union by Mr. Purkerson, and that he had been in the Indiana State Prison before that time on a charge of assault and robbery. He further stated that he also had been convicted of second degree burglary and had served six months in the Indiana State Farm. He further stated that he went to the appellee's restaurant in September, 1963, and left a business card, requesting that the appellee call him. He said he was in the union headquarters when the appellee called him, and that the appellee told him that he himself did not want to join the union but that if his employees wanted to join, they could do so and he would offer no objection. Mr. Harris stated that the ap-

pellee said he had no objection to the union officers organizing his restaurant. Mr. Harris also identified Plaintiff's Exhibit No. 1 and stated that Mr. Purkerson had composed the circular set forth in said exhibit and that Mr. Harris and he had mimeographed it. He stated that at least one thousand copies were mimeographed. He stated that Mr. Purkerson requested that he employ some people from the Mission to distribute the circular to the employees of General Electric as they came out the gate. He further stated that Mr. Purkerson told him that he wanted to run "this damn so and so out of business and he would keep General Electric from going there, companies he knows, all the representatives of the electrical union," and that Mr. Purkerson said he would break appellee one way or the other. Mr. Harris further said that he took people from the Mission directly to the gate of the General Electric plant and deposited them there, and that he observed two men passing out the circular. He stated that he observed appellee's restaurant, and that no customer was patronizing the restaurant.

Mr. Willis Bennett, a public accountant, testified that he had examined the books of the appellee for the years 1962, 1963 and 1964. He stated that the financial records that he examined consisted of the daily register receipts and all paid invoices and all expense vouchers for everything pertaining to the operation of the restaurant. He testified that once a month he examined all of such records and that he is the custodian of the books and records kept by the appellee. He further testified that he prepared Plaintiff's Exhibit No. 2 and that it purports to show, for the entire years of 1962, 1963 and 1964, the entire gross receipts realized by the operation of the restaurant. He said that in September, 1963, the gross business of the appellee had dropped from $4,169.26 down to $1,386.20; and that by October, 1963, the business dropped another $150.00. He said that Exhibit No. 2 also disclosed that the total loss incurred by the appellee was approximately $17,500.00.

The alleged libelous circular of which the appellee complains is as follows:

"WEDNESDAY SEPT. 10, 1963
TO ALL EMPLOYEES OF THE GENERAL ELECTRIC COMPANY

Dear Brothers and Sisters,

We, of the Hotel & Restaurant Employees and Bartenders Int'l Union, Local #211, are in the process of an organizing drive and are asking for support from every I.U.E. member. Restaurant employees have no benefits whatsoever and are the cheapest paid employees anywhere. If the boss doesn't like the way they comb their hair he can curse them, fire them, and so on. To get a paycheck from this type of employer is like trying to dig a hole from here to China, possible, but how. Julie's Restaurant does not employ union waitresses or cooks and he has stated many times that he will never employ a union person in his (Whatever you call it). Why then does he cater to Union people from the G. E. Co. if he hates Unions so much. Maybe it's because everybody likes him, of course I haven't found one single person to say a good work about him yet. Even members of the association he belongs to frown at the mention of his name. His kind is a great detriment to any union organization. We, of Local #211 are asking for your help. *Please Do Not Patronize Julie's Restaurant* at all, until further notice.

Norm's Restaurant, 1308 Broadway recently signed an agency shop contract with us and is just a couple doors from Julie's. The management and employee's heartily welcome your patronage their. We, of Local #211, want to thank each and everyone of you for your cooperation in this matter.

I REMAIN
FRATERNALLY YOURS
CLIFF PURKERSON
INT'L REPRESENTATIVE
H. & R.E. AND B.I.U.
227 W. MAIN STREET
FT. WAYNE, IND."

The appellee maintains that the above circular which was composed and circulated by the appellant's representative constituted defamation by libel *per quod* resulting in injury

to his reputation and consequent damage to his restaurant business.

At the outset the appellant argues that the trial court erred in overruling its motion for a continuance of this cause. The grounds presented for said motion was the anticipated absence of the defendant Cliff Purkerson. However, the record shows that Cliff Purkerson did appear, testify and participate in the trial. Therefore, any error committed by the trial court was cured by the physical presence of the non-appealing defendant, Cliff Purkerson.

The appellant maintains that the verdict of the jury is contrary to law in that the publication of the circular was not actionable *per quod*, that there was no injury to the appellee's reputation and that the defendant Cliff Purkerson did not act with malice in publishing the circular in question.

If a verdict, or finding of the court, is supported by substantial evidence of probative value, such verdict will not be disturbed on appeal. In *Haynes* v. *Brown* (1949), 120 Ind. App. 184, 88 N. E. 2d 795, we held that unless the evidence is all one way, and but one conclusion can be reached from the facts proved, and that conclusion is adverse to that of the trial court, the conclusion of the trial court will be upheld.

In conclusion, regarding this argument, the appellant is asking that this court weigh the evidence, test the credibility of the witnesses, and replace the jury's verdict with its own. The evidence most favorable to appellee as set out hereinabove shows conclusively that the jury could have arrived at the verdict it did without prejudice to any of the defendants.

Appellant contends that the above libel occurred during a labor dispute and therefore heated tempers and insulting and reckless statements are excused. *Linn* v. *United Plant Guard Workers of America, Local No. 14, et al.* (1966), 383

U. S. 53. We find, however, that the record is devoid of any evidence supported by proof that a legitimate labor dispute existed.

A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Restatement of The Law of Torts,* § 559, P. 140 (1938).

One who falsely and without a privilege to do so publishes a defamatory remark which ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, or profession, is liable to the other. *Gibson* v. *Kincaid* (1966), 140 Ind. App. 186, 221 N. E. 2d 834, 835.

If a communication is defamatory *per se,* then nominal damages will be presumed by the court and need not be specially pleaded, *Linn* v. *United Plant Guard Workers of America, Local 114, et al., supra;* however, in the absence of words actionable *per se,* special damages must be alleged in the complaint. *Gibson* v. *Kincaid, supra.* *"Per se"* is used to designate words whose defamatory nature appears without consideration of extrinsic facts. When we say that words are actionable only upon proof of "special" damage, we mean special in the sense that it must be supported by specific proof, as distinct from the damage assumed to follow in the case of libel *per se,* or libel *per quod* which falls into one of the four special categories of slander *per se.* In other words, special damages must be proved in the case of slander or libel *per quod* that does not involve the imputation of a crime, a loathsome disease, unchastity, or injury to the plaintiff's business, profession, trade or office. *McCormick, Damages,* 1935, 44; *Prosser, Law of Torts,* 1964, 778.

Having established that the law will presume damage without proof thereof in certain instances of defamation, we must

next determine the type of damages involved. When defamation is actionable *per se* without proof of special damages, only nominal damages may be awarded; whereas compensatory and punitive damages must be supported by a pleading and proof thereof.

In the case at bar, the appellee in the second legal paragraph of his complaint proceeded upon the theory of libel *per quod* which involved injury to his reputation and business. Nominal damages could have been presumed. However, the appellee sought also compensatory damages and was thereby required to plead and prove that his reputation was injured by the defamatory circular which resulted in injuries to his business or trade entitling him to special or compensatory damages.

It is our opinion that the appellee sustained his burden of proof of the above factors by a preponderance of the evidence, as found in the record of this case.

We turn our attention now to the issue of malice, which both parties to this appeal debated enthusiastically and with passion, but without regard to reason.

Except in the case of communication of defamatory material to a third person, the law of defamation does not require intent. The defendant may be held strictly liable for an innocent or negligent defamation without proof that he intended the consequences. *Restatement of Torts,* §§ 579, 580.

Malice is not an element of a cause of action for defamation, and its existence remains important only where the exercise of a qualified privilege is in question, or to affect the measure of punitive damages to be imposed. *New York Times Co.* v. *Sullivan* (1964), 376 U. S. 254.

Many courts resort to the fiction that malice will be presumed in all cases and thus need not be pleaded; however, this "presumed" malice does not entitle the plaintiff to punitive damages. *Devoy* v. *Irish World and*

*American Industrial Liberator Co.* (1924), 208 App. Div. 319, 203 N.Y.S. 369.

Because the appellee in the case at bar did not seek punitive damages, and the court, in its judgment, failed to distinguish between nominal, compensatory and punitive damages, the presence of malice has added to the confusion already present in this case. We shall presume that the damages awarded to the appellee were compensatory.

The appellant urges that the trial court erred in various other aspects in this case; however, we have considered these assigned errors in light of the record before us and are of the opinion that they do not constitute reversible error. This cause was fairly tried and the action of the trial court is hereby affirmed.

Judgment affirmed.

Cook, P. J., and Bierly and Pfaff, JJ., concur.

NOTE.—Reported in 233 N. E. 2d 784.