**Judy GRZELAK, Plaintiff-Appellant,**

v.

**CALUMET PUBLISHING COMPANY, INC., Defendant-Appellee.**

No. 73–1906.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 1974.

Decided May 1, 1975.*

---

* This appeal was originally decided by unreported order on May 1, 1975. See Circuit Rule 35 (formerly Circuit Rule 28). The court has subsequently decided to issue the decision as an opinion.

John A. Cook, Chicago, for plaintiff-appellant.

Don H. Reuben, Lawrence Gunnels, Chicago, for defendant-appellee.

Before FAIRCHILD, Chief Judge, TONE, Circuit Judge, and GRANT, Senior District Judge.**

GRANT, Senior District Judge.

Early in the year 1972, appellant, Judy Grzelak, became an employee in the Public Works Department of the Town of Highland, Indiana. She was hired at that time by Mr. Chester Napiwocki, the newly elected Democratic President of the Highland Town Board, to be the secretary to Mr. Royce Coulson, the Public Works Director of Highland. Her appointment purportedly resulted from the fact that Walter Grzelak, appellant's husband, had been very instrumental in Napiwocki's election to the Town Board. Further, it was Napiwocki's stated intent, once elected, to fill appellant's job with "his own people."

Shortly after appellant began her job, however, Mr. Coulson became concerned over her work performance as a secretary as well as her attendance record. He thereupon brought these matters to the attention of the Town Board. The Board, nevertheless, informed him that Mrs. Grzelak would remain on the job. Subsequently, Coulson telephoned Mr. James Alvord, Managing Editor of the Highland Sun-Journal, on two occasions telling Alvord (1) that Chester Napiwocki had ordered that Coulson's former secretary be replaced by Mrs. Grzelak when Napiwocki became President of the Highland Town Board, (2) that Mrs. Grzelak had been absent from work eight days between 1 January 1972, when she began work, and the month of April, 1972, (3) that Mrs. Grzelak was doing virtually no work for Coulson, (4) that Mrs. Grzelak was incompetent, unskilled, without secretarial skills, and of little value to him, and (5) that Mrs. Grzelak had been observed doing an impromptu "go-go dance" on a pool table at a local tavern called the Highland Tap. Following these telephone conversations, Alvord wrote three articles in the Highland Sun-Journal, the local newspaper, in which the information communicated to him by Coulson was discussed. These articles, particularly the publication of 20 April 1972, entitled "A $122 a Week Hoofer," constituted the basis of appellant's suit for libel in the district court.

After appellant instituted suit for the recovery of damages, appellee moved for summary judgment alleging that the defamatory articles were not published with actual malice within the doctrine of *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The district court granted this motion only in part, however, the court refusing to grant summary judgment as to the language in Count I of the Complaint that referred to the "go-go dance" episode on the grounds that such language related to plaintiff's private life and thus was not within the *New York Times* privilege. Nevertheless, when appellee filed a subsequent motion for summary judgment as to the language complained of concerning the "go-go dance," the court, treating the motion as a motion to dismiss for failure to state a claim, held that plaintiff had failed to plead special damages, Thereupon, the court proceeded to also dismiss Count I of the Complaint insofar as it related to the go-go dance incident. The present appeal followed.

Appellant contends, first of all, that the district court erred in granting summary judgment in favor of appellee because she asserts that on the facts of the case there exists a substantial and triable issue of fact as to whether the publications in question were made with reckless disregard. Further, she alleges that the trial court was in error in treating appellee's second motion for summary judgment as a motion to dismiss in that there exists an issue of fact on the question of special damages. Accord-

** Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

582

ingly, appellant maintains that the district court's rulings should be reversed and the case remanded for trial.

In response, appellee argues that summary judgment was properly granted in the court below since appellant failed to demonstrate the existence of a genuine issue of fact as to whether the allegedly defamatory statements were published with knowledge that they were false or with reckless disregard of truth or falsity. Appellee maintains that since appellant was a public employee and since the language in its articles regarding appellant's patronage employment related to matters of public interest and concern, its publications were protected by the First Amendment privilege of *New York Times v. Sullivan.* In this regard, appellee emphasizes that appellant has failed to meet her burden of proving the required actual malice.

Additionally, appellee asserts that the court below was correct in treating its second motion for summary judgment as a motion to dismiss since that motion concerned only the sufficiency of the allegations in Count I and not factual material. In any event, it is appellee's position that appellant's failure to allege special damages in her complaint was fatally deficient as a matter of law. Appellee, therefore, urges this Court to affirm the judgment of the district court.

▮ The principle espoused in the landmark case of *New York Times Co. v. Sullivan, supra,* simply stated, is that a public official is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves "actual malice"—that the statement was made with knowledge of its falsity or with reckless disregard of whether it was true or false. The concept of recklessness, as it is used to define *New York Times* malice, requires that the publisher act with a "high degree of awareness of . . . probable falsity" in printing the subject matter in question, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 3003, 41 L.Ed.2d 789 (1974); *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). It is clear

that "mere proof of failure to investigate, without more, cannot establish reckless disregard for the truth." *Gertz, supra,* 94 S.Ct. at 3003; *Beckley Newspapers Corp. v. Hanks,* 389 U.S. 81, 84–85, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967). Rather, the defendant must, in fact, entertain serious doubts as to the truth of the publication to be guilty of recklessness. *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

▮ The burden of proving actual malice on the part of the defendant, which is undoubtedly a very difficult and demanding burden, must be shouldered entirely by the plaintiff. Such a stringent burden results from the deep-rooted belief that "speech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison, supra,* 379 U.S. at 74–75, 85 S.Ct. at 216. Indeed, this heavy burden which is placed upon plaintiffs—and which appellant must sustain in the present appeal—is designed to minimize the "chilling effect" that libel suits invariably have on the exercise of First Amendment rights by publishers, *Time, Inc. v. McLaney,* 406 F.2d 565, 566 (5th Cir. 1969), and, as counsel for appellee noted during oral argument on appeal, "to prevent persons from being discouraged in the full and free exercise of their First Amendment rights . . . ." *Washington Post Company v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965, 968 (1966). The initial question for this Court to determine on appeal is whether the pleadings and affidavits show that the material facts about which there can be no genuine issue entitle defendant to judgment as a matter of law.

▮ First of all, we find merit in, and are persuaded by appellee's contention that appellant in this case occupied a public position and that the matter of her political appointment was a subject of public or general interest. Even if it could be argued, however, that in the present circumstances appellant was not a public figure about whom considerable editorial comment would be allowed, we are not in doubt that the fact that she was a political patronage

employee presents an issue about which the public at large undoubtedly has a genuine interest and concern. *Rosenbloom v. Metromedia,* 403 U.S. 29, 44–45, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) Given such circumstances, then, any statement which appellee published concerning appellant must have been made with actual malice for an action in libel to prevail.

We are convinced that the facts cannot support a finding of the required recklessness in the publications which referred to her and her official duties as secretary to Royce Coulson. James Alvord, the Managing Editor of the Sun-Journal, had known Coulson, the source of the information concerning appellant, for a considerable length of time prior to receiving the information. Furthermore, there is no evidence from which it could be determined that Alvord did not prepare the articles in question with the belief that the information as reported therein was true and accurate in all respects or that he doubted the integrity of either the source from which he received the information about appellant or the facts themselves as reported to him. Therefore, although we now decline to encourage or place our stamp of approval upon the care or lack thereof with which appellee went about obtaining and printing reportable material, nevertheless, we do hold, without reservation, that the facts would not support a finding of a level of reckless disregard for the truth that would amount to actual malice. Nowhere in the record do we find the slightest indication that appellee published the subject matter in question with a "high degree of awareness of . . probable falsity." *Gertz, supra.* Accordingly, the articles which discussed the subject of appellant's office practices and job performance do, in our opinion, fall within the limits of First Amendment protection under the test enunciated in *New York Times Co. v. Sullivan.*

The specific language in the April 20th publication involving the go-go incident, however, presents yet another issue in the present appeal. Accordingly, we now choose to treat it separately. As noted earlier, the district court declined to grant appellee's first motion for summary judgment as to the language pertaining to the go-go incident on the grounds that the episode presented genuine issues of fact with reference to accuracy, negligence, and privilege. It was only when appellee filed a second motion for summary judgment and after the court below treated that motion as a motion to dismiss that the question of the go-go dance episode was resolved. The district court held that since such language was not libelous *per se,* appellant's failure to allege special damages resulting from the defamatory publications rendered her complaint fatally defective for failure to state a claim. We must now determine the validity of that determination in the court below.

Under Indiana law, when allegedly defamatory language is not libelous *per se,* plaintiff must plead special damages in order to state a cause of action. *Gibson v. Kincaid,* 140 Ind.App. 186, 189, 221 N.E.2d 834 (1st Div. 1966). See *Rose v. Indianapolis Newspapers,* 213 F.2d 227, 229 (7th Cir. 1954). It is equally clear that special damages must be pleaded with sufficient particularity as to the loss sustained. *Novick v. Hearst Corp.,* 278 F.Supp. 277, 279 (D.Md. 1968); *Barton v. Barnett,* 226 F.Supp. 375, 377 (N.D.Miss.1964). Since we find that the circumstances were appropriate for the court below to treat appellee's second motion for summary judgment as a motion to dismiss because it was "concerned only with the sufficiency of the allegations in Count I, and not with factual material," *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273 (2nd Cir. 1968), we now find, under the applicable principles stated above, that the go-go language in issue was not libelous *per se.* Therefore, it follows that it was indeed fatal as a matter of law for appellant to fail to plead special damages in her complaint. In this regard, we are convinced that the allegations in appellant's complaint that she was "injured in her reputation and good standing in the community where she lives" and "has suffered and continues to suffer severe mental

and emotional pain and agony" do not constitute a sufficient statement of special damages in that the items of loss allegedly caused by the defamatory publications are not stated with the required particularity. *Barton, supra.*

In addition, we note that the record is amply clear that appellant has never, in reality, sustained any special damages. Although she claimed to have developed a skin condition as a result of nervousness caused by the publications in question, she also testified that she had neither lost her job nor incurred a decrease in salary nor lost any time from work, as a direct and proximate result of the articles. In this regard, it is well established that mental or emotional distress, even if accompanied by or the cause of a physical illness, is not a legally sufficient claim of special damage. *Hambric v. Field Enterprises, Inc.,* 46 Ill. App.2d 355, 196 N.E.2d 489, 491 (1964).

For the reasons discussed above, therefore, the judgment of the district court in favor of appellee, Calumet Publishing Company, Inc., is hereby AFFIRMED.