Thomas R. FADELL, Plaintiff-Appellant,

v.

MINNEAPOLIS STAR AND TRIBUNE COMPANY, INC., George Crile, Anne Crile, John Cowles, Jr., Russell Barnard and Robert Shnayerson, Defendants-Appellees.

No. 77–1126.

United States Court of Appeals, Seventh Circuit.

Argued June 2, 1977.

Decided June 16, 1977.

---

Lowell E. Enslen, Hammond, Ind., for plaintiff-appellant.

Roger Bryant Hunting, New York City, Daniel F. Kelly, Hammond, Ind., John W. Vardaman, Jr. and John B. Kuhns, Washington, D. C., for defendants-appellees.

Before CUMMINGS, SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

We are required to review the application of the *New York Times* rule to an alleged defamatory publication relating to a public official.

This is an appeal from the entry of a summary judgment in favor of all of the defendants in a libel action brought by an elected public official, the tax assessor of Calumet Township, Lake County, Indiana, based upon a nine-page article published in the November, 1972, issue of *Harper's Magazine* entitled "A Tax Assessor Has Many Friends—The Story of Tom Fadell, his rise to power in Gary, Indiana, and why he will probably stay there."

There was no dispute that the plaintiff was a public official subject to the application of the *New York Times* rule that the First and Fourteenth Amendments prohibit a public official from recovering damages in a civil libel action for defamatory falsehoods relating to his official conduct *unless* he proves that the statements were made with actual malice—that is, with knowledge that they were false or with reckless disregard of whether they were false or not. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *New York Times* requires that actual malice be shown with "convincing clarity." *Id.* at 285–286, 84 S.Ct. 710.

Where the *New York Times* rule is applicable, the Supreme Court has required that an appellate court make an independent examination of the whole record to determine whether it could constitutionally support a judgment for the plaintiff "so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." *Id.* at 284–285, 84 S.Ct. at 729.

In *Carson v. Allied News Co.*, 529 F.2d 206, 210 (7th Cir. 1976), we accepted the following test enunciated in the concurring opinion of Judge Wright in *Wasserman v. Time, Inc.*, 138 U.S.App.D.C. 7, 424 F.2d 920, 922–923 (1970), for applying the "convincing clarity" standard in summary judgment situations:

> Unless the court finds on the basis of pretrial affidavits, depositions or other documentary evidence, that the plaintiff can prove actual malice in the *Times* sense, it should grant summary judgment for the defendant.

In *Grzelak v. Calumet Publishing Co.*, 543 F.2d 579, 582 (7th Cir. 1975), we added that the "question for this Court to determine on appeal is whether the pleadings and affidavits show that the material facts about which there can be no genuine issue entitle defendant to judgment as a matter of law."

Inasmuch as the pretrial record in this case is unusually voluminous, the court below was faced with a gigantic task in measuring the plaintiff's contentions of the existence of genuine issues against the pretrial affidavits, depositions and other documentary evidence. This task was fulfilled by that court with painstaking detail and scrupulous documentation in weighing each contention of the plaintiff against the whole record. The lower court's diligence, as well as that of all counsel both when in the lower court and in presenting this appeal, have enabled us to be guided through the vast record in order to fulfill our appellate function.

The plaintiff had received an advance galley proof of *Harper's Magazine* article from an unknown source on October 14, 1972 and two days later he notified the magazine's officials of his intention to sue for libel. On October 27, the plaintiff sent a "Notice of Libelous Publication" to *Harper's Magazine*, complaining of 24 allegedly libelous passages in the article. The 24

passages were incorporated in the complaint filed in the lower court on December 13, 1972. On October 11, 1974, the plaintiff filed an amended complaint again incorporating the 24 passages but adding that "the defendants inferred in said article that plaintiff was a member of the 'Mafia' or had dealings and/or connections with the 'Mafia' . . ." The lower court found that "[t]hese passages plus additional statements complained of at Faddell's deposition comprise the bases for this lawsuit."

The defendants all joined in two motions for summary judgment, each supported by a memorandum, the lengthier one being 116 pages long and referring to the pretrial documentation relating to the 24 original charges and to 21 additional statements referred to in the plaintiff's deposition. Supporting the defendant's motions for summary judgment were seven volumes of material containing documentary sources for each disputed statement. Volumes I through III consist of 33 sets of the author Crile's handwritten interview notes covering 1128 pages. Volume IV consists of 17 transcripts covering 418 pages of tape recorded interviews. Volume V contains 285 pages of copies of Internal Revenue documents which were given to Crile. Volume VI contains 261 pages and Volume VII 80 pages of miscellaneous documents obtained by Crile or reviewed by him during the course of preparing the disputed article. Source material was provided for all 69 persons interviewed by Crile, either in the seven volumes filed with the summary judgment motions or in the depositions of 23 witnesses covering 5,671 pages. Crile was questioned for eight days and the transcript of his deposition covers 1,443 pages. He also responded to 341 interrogatories.

The plaintiff responded to the defendants' motions for summary judgment with a 214-page memorandum in opposition to summary judgment, supported by three volumes containing 133 attachments, including about 50 affidavits, and relying upon 22 alleged false and defamatory statements in the article. The defendants filed a brief response to the opposition.

The lower court carefully analyzed all of the pretrial material and entered four separate orders on December 1, 1976. The first was the summary judgment order in favor of the defendants and against the plaintiff, which is the order appealed from here. The second document was a memorandum opinion which was published in 425 F.Supp. 1075–1088 (N.D.Ind.1976), and covers 14 pages in the Federal Supplement. All parties had submitted proposed findings of fact and conclusions of law to the district court, which adopted the two of those submitted by the defendants. The findings and conclusions submitted by the publisher defendants and signed by the court on December 1, 1976 consisted of 25 findings and 2 conclusions. The findings and conclusions submitted by the author defendant and signed by the court consisted of 49 findings and 10 conclusions. All of the plaintiff's contentions are considered and resolved, including the "Mafia" matter (Finding No. 47).

█ With the guidance of these documents and the briefs on appeal we have examined the whole record and affirm the lower court. We also adopt as our own the lower court opinion at 425 F.Supp. 1075, including the conclusion that "a careful review . . . [of the record] reflects no actual malice whatsoever as that term is contemplated in *New York Times v. Sullivan* and its progeny." *Id.* at 1088. Summary judgment for the defendants was warranted by applying the tests we have established in *Carson* and *Grzelak, supra.*

█ We note finally that although the plaintiff attempts to surmount the obstacles imposed by *New York Times*, his major thrust continually goes to the truth or falsity of the published statements rather than to the basic problem of whether they were published with actual malice. Factual error is inevitable in free debate and must be countenanced in order to give freedom of expression "breathing space." *New York Times Co. v. Sullivan*, 376 U.S. 254, 271–272, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). A rule limiting constitutional protection to only true statements would lead to self-censorship because difficulty in proving truth

would cause those voicing criticism to "steer far wider of the unlawful zone." *Id.* at 279, 84 S.Ct. at 725.

 As Chief Judge Kaufman recently said in *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113 (2d Cir., decided May 25, 1977), "the interest of a public figure in the purity of his reputation cannot be allowed to obstruct that vital pulse of ideas and intelligence on which an informed and self-governing people depend."

Judgment Affirmed.