Thomas J. TACKET, Plaintiff–Appellee,

v.

**DELCO REMY DIVISION OF GENERAL MOTORS CORPORATION, Defendant–Appellant.**

No. 89–3496.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1990.

Decided July 22, 1991.

Rehearing Denied Sept. 6, 1991.

**1202**

J. Lee McNeely, McNeely, Sanders, Stephenson & Thopy, Shelbyville, Ind., for plaintiff-appellee.

Arend J. Abel, Barnes & Thornburg, Indianapolis, Ind., Herbert C. Snyder, Jr., Barnes & Thornburg, Fort Wayne, Ind., for defendant-appellant.

Before BAUER, Chief Judge,
CUDAHY and COFFEY, Circuit Judges.

BAUER, Chief Judge.

According to the age-old children's rhyme, "Sticks and stones may break your bones, but names can never hurt you." Plaintiff-appellee Thomas Tacket and the law of defamation, however, argue otherwise. According to Tacket, another mellifluous rhyme, one that read "TACKET TACKET WHAT A RACKET," when painted on the inside wall of General Motors', Anderson, Indiana, assembly plant and allowed to remain there for seven or eight months, defamed him and irreparably damaged his reputation.

In this appeal, we revisit a case that we remanded to the district court in 1987. In the instant appeal, we are asked to review the district court's decision that the jury properly could award Tacket $100,000 for the damages he suffered due to the display of the five-word rhyme. Applying settled law from both the state of Indiana and this circuit, we find that Tacket failed to prove the requisite "special damages," and therefore, his award must be reversed.

I.

Tacket filed this defamation claim in 1985 against his former employer, General Motors, in an Indiana court. General Motors removed it to federal court based on diversity jurisdiction. Tacket alleged that his reputation was irreparably damaged by the sign described above, which was written and displayed by managerial employees of General Motors. The case was tried to a jury before the Honorable James E. Noland of the Southern District of Indiana in February 1987. At the close of the evidence, Judge Noland directed a verdict for the defense. *See Tacket v. Delco Remy,* 678 F.Supp. 1387 (S.D.Ind.1987).

On appeal to this court, we affirmed in part, reversed in part, and remanded the case to the district court for certain factual determinations. *See Tacket v. General Motors Corporation ("Tacket I"),* 836 F.2d 1042 (7th Cir.1987). Specifically, the district court was to decide: 1) whether General Motors published the sign by intentionally failing to remove it; 2) whether Tacket took appropriate steps to attempt to have the sign removed; 3) whether the statement "TACKET TACKET WHAT A RACKET" did, in fact, defame Tacket; and 4) whether Tacket suffered any damage as a proximate result of the publication of the statement. *Id.* at 1047. In that earlier opinion, we noted that Tacket had "an unenviable task" on remand: "Even if he persuades the jury that General Motors published the small sign by inaction, that he took appropriate steps to deal with the sign, and that the sign defamed him, he still must trace injury to that sign." *Id.*

On remand, the case was tried to a jury before the Honorable Larry J. McKinney in April 1989. The evidence revealed the following: Thomas Tacket was an employee at Delco Remy Division of General Motors ("Delco") in Anderson, Indiana. Tacket was first employed by Delco in 1971, and rose to the level of night superintendent in 1983. In February 1985, Delco's Anderson facility was working on a generator production contract entitled the "9–S1 Project." A problem arose concerning the attainment of wooden shipping crates. Ed Spearman, one of Tacket's subordinates, suggested that "S & T Specialties" provide the needed crates. Tacket received requisition forms for the crates and processed them during off-duty hours. Both he and Spearman signed the forms.

Some time later, the union representing Delco's workers discovered that Delco was buying the crates from an outside supplier and protested the "out-sourcing" of work that Delco's own staff could have performed. The union also discovered that Spearman was the "S", and suspected that Tacket was the "T", of "S & T Specialties". (The crates were being constructed in Spearman's garage.) Delco promptly suspended both Spearman and Tacket pending an investigation. Delco ultimately fired Spearman, but concluded that it had insufficient evidence to discharge Tacket. He returned to work on April 9, 1985, but his relationship with the workers had soured. Delco thereafter transferred him to a "quality assurance team" with the same rank and salary but with fewer subordinates.

Upon learning of the out-sourcing, the workers spread rumors about Spearman and Tacket. At some point, a sign approximately 3' x 30' appeared inside the plant proclaiming the infamous rhyme "TACKET TACKET WHAT A RACKET." This sign stayed up for two to three days during Tacket's suspension. A second, smaller sign approximately 1' x 4' proclaiming the same message was stenciled on the inside wall of the plant (see photo at *Tacket I*, 836 F.2d at 1044) and remained there for at least seven months.

On the issue of damages, Tacket offered the testimony of Frank Connolly, a psychologist, who diagnosed Tacket to have suffered a psychiatric illness know as depressive neurosis. Connolly testified that Tacket was alienated, dysfunctional, and lacked energy. Connolly linked Tacket's condition to the small sign and noted that it affected his job performance. Tacket's job performance prior to the incident was better than after the incident, as reflected by the poor job performance ratings he received.

At the close of the evidence, the district court instructed the jurors that Tacket could prove damage from the sign in two ways: 1) if the sign were found to impute a crime or to prejudice him in his profession, then injury to his reputation would be established; or, 2) if the sign did not impute such things, then the jury was instructed that the plaintiff could recover only if "special damages" were proven. Special damages were defined as the loss of something having economic or pecuniary value, or the loss of a benefit that has an indirect financial value to the plaintiff. Special interrogatories were given to the jury to aid their deliberations.

The jury returned a verdict for the plaintiff in the amount of $100,000. The jury indicated on its special verdict form that the sign did not tend to damage the plaintiff's reputation without regard to extrinsic circumstances, but that it did defame the plaintiff when considered with other facts. The jury further found that Delco intentionally and unreasonably failed to remove that sign (thereby "publishing" it), and that plaintiff exercised proper care for the protection of his own interests.

Delco then moved to set aside the verdict, arguing that the jury's finding that the sign did not defame Tacket without consideration of extrinsic facts, coupled with Tacket's alleged failure to plead and prove "special damages," mandated entry of judgment in its favor. In its Order of July 6, 1989, the district court determined that Indiana libel law allowed recovery of proven psychological injuries as part of special damages, and permitted Tacket to amend his pleadings to conform them to

the evidence. Thus, on the basis of the amended pleadings and the jury's verdict, the district court found that Tacket had indeed pleaded and proved special damages. The district court denied Delco's motion and allowed the verdict to stand. Delco then filed a motion to alter or amend the judgment, arguing that Tacket's cause of action fell within the exclusive remedy provisions of the Indiana Worker's Compensation Act, Ind.Code § 22–3–6. The district court, by Order dated October 13, 1989, held that, though the defense presented by the motion was meritorious, it was not raised before the conclusion of the trial and, therefore, was not timely. Delco appealed.

## II.

■ At the outset, we note that this court reviews a district court's denial of a motion for judgment notwithstanding the jury verdict *de novo*. *Siddiqi v. Leak*, 880 F.2d 904, 908 (7th Cir.1989) (citations omitted). In such a review, we must "determine whether there is sufficient evidence, when combined with all inferences reasonably drawn, to support the jury's verdict when the evidence is viewed in the light most favorable to the non-moving party." *Id.* This court will not weigh or evaluate the evidence; that task is reserved for the jury as factfinder. Instead, we are charged with determining whether the evidence, when taken as a whole, provides sufficient support for the jury's verdict. *Id. See also Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir.1989).

■ Though Delco presents several claims on appeal, only one issue concerns us today: whether Tacket, under Indiana law,[1] adequately proved special damages. In order to resolve this dispute, we need first consider the broader outlines of defamation law in Indiana. As the district court appropriately noted, defamation, defined as holding a person up to ridicule, scorn or contempt, *See Black's Law Dictionary* at 417 (6th ed. 1990), is comprised of

two related torts: libel and slander. Libel generally is concerned with defamatory communications of a permanent sort, such as printed matter, films, and art work. Slander, on the other hand, involves transitory, ephemeral communications, such as speech, gestures, and sign language. *See generally* Prosser and Keeton, *The Law of Torts* 785–97 (5th ed. 1984) ("[L]ibel is that which is communicated by the sense of sight, or perhaps also by touch or smell, while slander is that which is communicated by the sense of hearing.").

■ In addition to these related torts, the law of defamation includes certain categories and labels. In its July 6, 1989 Order, the district court ably reviewed the history of defamation law and discussed the meaning of the labels *"per se"* and *"per quod."* For our purposes, suffice it to say that defamation *per se* involves words (whether slanderous or libellous) which, by themselves and without reference to extrinsic circumstances, injure the reputation of the person to whom they are applied, whereas defamation *per quod* requires an allegation of facts and circumstances, aside from the words contained in the publication, to show how the words damage the plaintiff. *Black's Law Dictionary* at 417. It generally is agreed that words, whether they be in the form of libel or slander, and which are defamatory *per se* or *per quod*, are actionable without allegation and proof of any special harm if they: a) impute to another the commission of a crime; b) impute to another a loathsome disease; c) impute unchastity to a woman; or d) tend to injure another in his trade or profession. *Gibson v. Kincaid*, 140 Ind.App. 186, 221 N.E.2d 834, 843 (1967) (Faulconer, J., concurring).

In libel actions, it was well-established by the beginning of the nineteenth century that any libel was actionable *per se*, meaning that it was actionable without the necessity of pleading and proving that the plaintiff suffered any harm from the defamatory writing. Prosser and Keeton, *su-*

---

**1.** In the instant case, federal jurisdiction is based upon diversity of citizenship. The substantive law of Indiana, then, must be applied to

questions presented for review. *See PPG Industries, Inc. v. Russell*, 887 F.2d 820, 823 (7th Cir.1989).

*pra*, at 795. As time passed, however, a sharp disagreement developed about the need to prove special damages in libel *per quod* cases—that is, in cases where the publication became defamatory only to those who were aware of defamatory facts extrinsic to the matter published. *Id.* Because the jury's special verdict made clear that they found the small, painted sign defamatory only when extrinsic circumstances were taken into account, it is undisputed that libel *per quod* is implicated in this case. Thus, the crucial questions are whether libel *per quod* requires pleading and proof of special damages under Indiana law, and, if so, whether Tacket accomplished these tasks in this case. We will consider each question in turn.

■ The Indiana courts have restated the following general rule on many occasions:

> If a communication is defamatory *per se*, then nominal damages will be presumed by the court and need not be specially pleaded; however, in the absence of words actionable *per se*, special damages must be alleged in the complaint.... When we say that words are actionable only upon proof of "special" damage, we mean special in the sense that it must be supported by specific proof, as distinct from the damage assumed to follow in the case of libel *per se*, or libel *per quod* which falls into one of the four special categories.... In other words, special damages must be proved in the case of slander or libel *per quod* that does not involve the imputation of a crime, a loathsome disease, unchastity, or injury to the plaintiff's business, profession, trade or office.

*Hotel and Restaurant Employees Union v. Zurzolo*, 142 Ind.App. 242, 233 N.E.2d 784, 790 (1968). *Accord, Jacobs v. City of Columbus*, 454 N.E.2d 1253, 1264 (Ind. App.1983); *Rose v. Indianapolis Newspapers*, 213 F.2d 227, 229 (7th Cir.1954). Thus, libel *per quod* under Indiana law requires that both extrinsic defamatory facts and special damages be pleaded and proved. *See Agnew v. Hiatt*, 466 N.E.2d 781, 782 (Ind.App.1984) (holding that if an alleged defamation is not defamatory *per se*, "special damages must be alleged in the complaint"); *Gibson*, 221 N.E.2d at 836–37 (affirming judgment for defendants in a defamation case on the grounds that no special damages were proven).

Given that special damages are required to be pleaded and proved in Indiana libel *per quod* cases, we turn to the next question: whether Tacket has done so in this case. To resolve this issue, we must determine what constitutes "special damages." As noted above, the district court instructed the jury that special damages mean that Tacket must show some economic or pecuniary loss, or the loss of a benefit that places on Tacket an indirect financial burden. Yet, in its July 6 Order, the district court interpreted Indiana law "to allow recovery of any damage, pecuniary or otherwise, that is specially pleaded and proved to be a proximate result of the complained of circumstances in a defamation case." The district court determined that, because Tacket showed a specific, psychiatric injury resulting from the sign, he need not demonstrate any pecuniary loss.

We disagree with the district court's interpretation of Indiana law. Though we generally accord great weight to the legal interpretations of the district court sitting in the state whose law is to be applied, *PPG Industries*, 887 F.2d at 823; *see also Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 286 n. 9 (7th Cir.1990), we may not neglect our duty to review determinations of law *de novo*. In our review of Indiana law, we find the district court's conclusion that "special damages must include any type of recoverable injury that can be proven by specific evidence" inconsistent with controlling Indiana precedent. Tacket's evidence of psychological injury simply does not fall within the class of special damages.

In *Grzelak v. Calumet Publishing Company*, 543 F.2d 579 (7th Cir.1975), another case involving Indiana defamation law, we held that a motion to dismiss properly was granted where the alleged defamatory matter was not libelous *per se*, even though

the plaintiff alleged she had "suffered and continues to suffer severe mental and emotional pain and agony." *Id.* at 583–84:

> Under Indiana law, when allegedly defamatory language is not libelous *per se*, the plaintiff must plead special damages in order to state a cause of action.... [Grzelak] has never, in reality, sustained any special damages. Although she claimed to have developed a skin condition as a result of nervousness caused by the publications in question, she also testified that she had neither lost her job nor incurred a decrease in salary nor lost any time from work, as a direct and proximate result of the articles. In this regard, it is well established that mental or emotional distress, even if accompanied by or the cause of a physical illness, is not a legally sufficient claim of special damage.

As the above excerpt reveals, the plaintiff in *Grzelak* allegedly suffered the same kind of injury as Tacket, yet her psychological distress was held insufficient to satisfy the requirement that special damages be pleaded and proved. Tacket's claim must suffer the same fate.

Tacket's burden was to show damages that are "pecuniary in nature" and that "have been actually incurred as a natural and proximate consequence of the wrongful act." *Stanley v. Kelley*, 422 N.E.2d 663, 668 (Ind.App.1981). *Accord*, C. McCormick, *Damages* § 114 (1935) ("The 'special damage' required in defamation cases must be some material or pecuniary injury. Injury to reputation without more, humiliation, mental anguish, physical sickness—these do not suffice."). In the instant case, Tacket presented no evidence of any pecuniary loss.[2] Instead, he demonstrated that he suffered emotional distress and psychological injury. But such maladies, however painful to Tacket, are only general damages—the kind that routinely follow a defamation. Injury to the plaintiff's reputation and standing in the community, personal humiliation, and mental anguish and suffering are the sort of damages that the law presumes to be the natural result of the publication; they are not special damages. *Stanley*, 422 N.E.2d at 668–69.

Though we may imagine the rare case, not before this court, where a plaintiff in a defamation *per quod* case might satisfy the "special damages" requirement with evidence that did not directly involve economic loss, the customary and inevitable psychological injuries following a defamation—all that Tacket proved at trial—surely cannot suffice. *See Elliott v. Roach*, 409 N.E.2d 661, 683 (Ind.App.1980) ("Special damages, as opposed to such generally 'presumed' damages, are not assumed to be necessary or inevitable results of the defamation, and must be shown by allegation and proof. They generally are of a pecuniary nature."). By finding that Tacket's psychological injuries were sufficient, the district court has, in effect, dismissed the "special damages" requirement from Indiana law for libel *per quod* cases.

Finally, we note that the cases upon which the district court relies essentially are unavailing. First, the district court points to Judge Faulconer's concurrence in *Gibson*, 221 N.E.2d at 840. Judge Faulconer wrote there that "special damage means that the loss sustained by the plaintiff must be a particular loss, supported by specific evidence." *Id.* at 846. The district court seizes upon the fact that the concept of pecuniary loss is absent from Judge Faulconer's statement in order to conclude that special damages need not be restricted to economic injury. This position is belied

---

**2.** In his brief, Tacket argues that there was, in fact, evidence of pecuniary loss. He suggests that, though it was not reflected in his salary or benefits, his psychological distress nonetheless interfered with his job performance and ultimately caused his termination from Delco. Thus, Tacket maintains that his "ability to make a living was diminished by the defamation published by Delco." Appellee's Brief at 12. It is unnecessary to consider whether proving loss of employment would have been sufficient to establish special damages. No such proof is before this court. In a pretrial motion in limine, the court granted Delco's motion to exclude any evidence relating to the termination of Tacket's employment by Delco. Therefore, we find Tacket's claims regarding economic injury without sufficient support in the record properly to be considered pecuniary loss. *See Grzelak*, 543 F.2d at 584.

by Judge Faulconer's statement only two paragraphs later, where he cites with approval an Indiana Court of Appeals decision that "held that there was no allegation of special damages in the complaint averring 'she suffered and continues to suffer great mental pain, anguish and humiliation, and has become ill and sick from worry and anxiety concerning the injury to her good name....'" *Id.* (quoting *Patton v. Jacobs*, 118 Ind.App. 358, 78 N.E.2d 789, 790 (1948)). Judge Faulconer's concurrence, then, though arguably ambiguous, is surely not sufficient to overturn the long line of cases that hold that special damage generally means pecuniary loss. In the final analysis, the holding of *Gibson*—that the plaintiff could not recover damages from an alleged defamation where there was no showing that he suffered any specific impairment—is consistent with our decision today.

Similarly, the district court's reliance on *Zurzolo*, 233 N.E.2d at 784, is misplaced. The district court considered only one sentence from the opinion, and then concluded that the selected language supported the finding that Tacket's distress constituted special damages. Yet, in *Zurzolo*, there was clear proof of pecuniary injury in the form of damage to the plaintiff's restaurant business to the tune of $17,500. *See id.*, 233 N.E.2d at 789. The *Zurzolo* court relied upon this showing of pecuniary injury when it concluded that the plaintiff adequately had demonstrated that his reputation was injured by the libel. *Id.*, 233 N.E.2d at 791. Thus, *Zurzolo* does not support the district court's conclusion, and instead buttresses our finding that special damages imply specific economic or pecuniary loss.

### III.

For the foregoing reasons, we find Tacket's evidence of psychological injury insufficient to demonstrate the special damages necessary to uphold the jury's award. With this conclusion, we need not examine Delco's other claims on appeal. The order of the district court denying Delco's motion for judgment notwithstanding the verdict is, therefore, REVERSED. We VACATE the judgment on the verdict, and REMAND this case to the district court to enter judgment for Delco, each party to bear its own costs.

CUDAHY, Circuit Judge, dissenting.

It is, to say the least, disheartening—and perhaps even productive of a depressive neurosis—to see the scholarly efforts of a district court judge to make sense of Indiana libel law set at naught. I agree with Judge McKinney that "[t]here is no precedential or jurisprudential reason to allow a libel plaintiff to call witnesses to specially prove his business losses, but to disallow expert and other testimony to prove his psychological injuries." Dist. Ct.Op. at 13.

The majority seems to be mired in the jurisdictional conflicts between the ecclesiastical and the common law courts of the sixteenth century. The ecclesiastical courts regarded defamation as a sin and punished it with a penance. For a considerable period of time, therefore, the common law courts held that, unless "temporal" damage could be proved, defamation was a "spiritual" matter to be left to the Church. *See* Prosser, *The Law of Torts* 772; *see also* Veeder, *The History and Theory of the Law of Defamation*, 3 Colum.L.Rev. 546 (1903). Perhaps the majority, too, views a psychological diagnosis as in the "spiritual" realm and thus beyond our competence.

In fact, psychologists may not have really added much to what in another day would have been perceived as a problem of the spirit, best left to ecclesiastical attention. But, *given modern postulates and perspectives*, I see no reason to equate what purports to be a scientific diagnosis threatening adverse economic consequences (through lowered job performance) with a mere presumption of mental anguish and emotional distress. This is the equation, however, that the majority makes. Despite the scientific trappings of expert testimony, the majority is unwilling to factor these matters of the "spirit" into its calculations.

Indiana law is at least ambiguous and, to invoke another psychiatric diagnosis, schiz-

ophrenic on this subject. The majority signally fails to explain away the statement in Judge Faulconer's concurrence in *Gibson v. Kincaid*, 140 Ind.App. 186, 221 N.E.2d 834, 846 (1967), that "special damages means that the loss sustained by the plaintiff must be a particular loss, supported by specific evidence." The majority merely relies on a later statement in *Gibson* suggesting the inadequacy of general allegations of mental anguish and the like. The majority's effort to distinguish *Hotel and Restaurant Employees Union v. Zurzolo*, 142 Ind.App. 242, 233 N.E.2d 784 (1968), is similarly strained. The district court has, therefore, found more than adequate support in Indiana law for the result it has sought to reach.

By seeking to interpret Indiana law as congruent with modern concepts of psychology as a science, the district court has hit upon a perfectly acceptable basis for abandoning jurisdictional distinctions of the sixteenth century that have, as far as I can see, no current utility. The majority, on the other hand, adopts a view which might regard proof even of irreversible psychosis as a mere restatement of mental anguish and emotional distress. For a psychosis, too, is a thing of the spirit (albeit an evil one).

I therefore respectfully dissent.